No. 104,475

STATE OF KANSAS, *Appellee*, v. CODY BREEDEN, *Appellant*.

(304 P.3d 660)

Opinion filed June 14, 2013.

*Matthew J. Edge*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jennifer S. Tatum*, assistant district attorney, argued the cause, and *Michael A. Russell*, chief deputy district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Cody Breeden appeals his conviction for aggravated criminal sodomy of a child under the age of 14 and his sentence of life imprisonment with a mandatory minimum term of imprisonment of not less than 25 years. Breeden raises five issues: (1) The trial court erred by failing to instruct the jury on attempted aggravated criminal sodomy as a lesser included offense; (2) the trial court erred by failing to give a limiting instruction regarding the admission of evidence that Breeden battered and threatened the victim; (3) his constitutional right to testify was violated because the trial court did not obtain an affirmative waiver of that right on the record; (4) his hard 25 life sentence violates the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights; and (5) the sentencing court erred by en-

tering a journal entry reflecting a sentence that included lifetime postrelease supervision.

We find that Breeden's first four issues either lack merit or were not properly preserved. We, therefore, affirm his conviction and his hard 25 life sentence. As to the fifth issue, we conclude the sentencing court erred in entering a journal entry that did not reflect the punishment imposed at the sentencing hearing and instead recorded an illegal punishment of lifetime postrelease supervision. We, therefore, vacate the journal entry requirement of lifetime postrelease supervision and remand for entry of a corrected journal entry.

## FACTS AND PROCEDURAL BACKGROUND

The incident that resulted in Breeden's conviction for aggravated criminal sodomy occurred on March 22, 2009, when Breeden, who was 21 years of age at the time, was alleged to have sodomized 10-year-old L.B.

Breeden was a friend of L.B.'s older brother and had been to L.B.'s house on many occasions, even when his friend was not around. On March 22, 2009, Breeden came to L.B.'s house to visit his friend and found that his friend was not home. Regardless, Breeden went to his friend's basement bedroom.

According to L.B.'s statements to law enforcement officers and his testimony, L.B. was lying on his brother's bed when Breeden came into the basement bedroom. Breeden sat down on a loveseat in the room and, after a while, moved from the loveseat to the bed. Breeden then pulled down L.B.'s pants and started sucking L.B.'s penis.

About that time, Richard Leslie, L.B.'s godfather and a friend of L.B.'s family, came down the stairs. He "observed a young man sitting in what appeared to be like a computer chair, . . . and he was bent over where [L.B.'s brother's] bed was." Leslie testified that all he could see

"was from the chest down, I couldn't see his head or anything of that nature from my vantage point. But as soon as I reached the bottom of the steps, he jumped and ran past me. And I stepped on in the room and [L.B.] was laying [sic] on the bed and immediately he pulled his pants up."

Leslie could not see Breeden's head or L.B.'s body but he thought Breeden "was trying to commit oral sex" on L.B.

Leslie went back upstairs and told L.B.'s mother that she needed to call L.B. upstairs. Leslie did not tell her why, only that something inappropriate was happening and he thought he saw L.B. pulling up his pants. When L.B. came upstairs after being called, his mother asked him what had happened. At that point, Breeden also came upstairs to leave and L.B. "clammed up" and would not answer his mother's question. After that, according to L.B.'s mother, he kept looking at the door Breeden had used to exit the house and would not talk. She said L.B. seemed distracted and "he was not wanting to talk to me like he usually would talk to me, he was hiding his head and real nervous about not talking." Eventually, she took L.B. into another bedroom and asked what would make it easier for him to tell her what had happened. L.B. put his face in a pillow and told her that Breeden had "taken him off the chair and punched him in the stomach and threw him on the bed and held him down and started sucking his [penis]." L.B.'s mother said she was going to call the police. L.B. asked her not to because Breeden said he was going to kill L.B. if he told anyone about what happened. Nevertheless, she made the call.

Breeden did not testify at trial. The jury heard Breeden's explanation of what happened, however, because the State played a recording of his interview with the law enforcement officers. In the interview, which was conducted 2 days after the incident, Breeden stated he was in his friend's bedroom when L.B. came downstairs and got on the bed beside Breeden. L.B. played with Breeden's phone for a while and then "pulled his pants down and asked me three times to suck his penis." After the third time L.B. asked, Breeden sucked L.B.'s penis for about 60 seconds, hoping L.B. would stop asking. Breeden said he stopped because he felt like it was not right; he denied stopping because they were interrupted.

Based on this evidence, a jury convicted Breeden of aggravated criminal sodomy of a child under the age of 14, in violation of K.S.A. 21-3506(a)(1). Before sentencing, Breeden filed a motion for a departure from the statutory life sentence with a mandatory minimum term of imprisonment of not less than 25 years and life-

time postrelease supervision. See K.S.A. 21-4643(a)(1)(D) (commonly known as Jessica's Law). In addition, at the sentencing hearing, Breeden challenged the constitutionality of the hard 25 life sentence under § 9 of the Kansas Constitution Bill of Rights. The sentencing court denied the departure motion and Breeden's constitutional challenge and sentenced Breeden to the hard 25 life imprisonment term provided for in Jessica's Law.

Breeden timely appealed his conviction and sentence. This court has jurisdiction under K.S.A. 22-3601(b)(1) (maximum sentence of life imprisonment; hard 25 life sentence imposed for off-grid crime; appeal docketed before July 1, 2011).

ISSUE 1: *The Trial Court Did Not Err in Failing to Give Jury Instruction for Attempt*

Breeden's first argument is one that was not raised before the trial court. He argues the evidence supports a lesser included offense of attempted aggravated criminal sodomy and the trial court committed clear error by not instructing the jury on that lesser included offense. The State asserts that Breeden's confession to law enforcement officers precludes a conviction for the lesser offense; thus, the trial court did not err in failing to instruct on the lesser included offense of attempted aggravated criminal sodomy.

Recently, in *State v. Williams*, 295 Kan. 506, 286 P.3d 195 (2012), this court set out the analytical framework to be applied when a claim of error is based on the failure to give a jury instruction that was not requested at trial. In that decision, after recognizing the framework for such an analysis is guided by K.S.A. 22-3414(3), we noted that past applications of the statute had conflated the determinations of appellate reviewability, error on the merits, and reversibility of the error. In an attempt to differentiate those analytical steps, *Williams* stated:

"[T]o determine whether it was clearly erroneous to give or fail to give an instruction, the reviewing court would necessarily have to first determine whether it was erroneous. In other words, to determine whether the claim of error is properly reviewable, the court must first determine whether there is an error, *i.e.*, perform the merits review in the second step of the normal appellate process. That review for error necessarily presents a legal question subject to unlimited review.

"Only after determining that the district court erred in giving or failing to give a particular instruction would the reviewing court engage in the reversibility inquiry. Given that it has been utilized for decades, the current definition of clearly erroneous sets up the test to determine whether the instruction error requires reversal, *i.e.*, whether the reviewing court is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. This assessment of whether there has been injustice would involve a review of the entire record and a de novo determination. *Cf. State v. Ward,* 292 Kan. 541, Syl. ¶ 8, 256 P.3d 801 (2011) (harmless error analysis performed de novo), *cert. denied* 132 S. Ct. 1594 (2012)." *Williams,* 295 Kan. at 515-16.

We further explained how to conduct the first step of the analysis when the issue is whether it was clearly erroneous to fail to give a lesser included offense instruction, stating: "[W]e must necessarily look first at whether it was legally and factually appropriate for the district court to give a lesser included offense instruction." *Williams,* 295 Kan. at 521 (citing *State v. Plummer,* 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 [2012]).

When an appellate court considers the legal appropriateness of an instruction "appellate review is unlimited, as with all questions of law." *Plummer,* 295 Kan. at 161. In the context of lesser included offense instructions, an appellate court asks whether the lesser crime is "legally an included offense of the charged crime." *Plummer,* 295 Kan. at 161. In this case, the question of whether attempted aggravated criminal sodomy is legally an included offense of the charged crime of aggravated criminal sodomy is easily answered. K.S.A. 21-3107(2)(c) states: "A lesser included crime is . . . an attempt to commit the crime charged." Hence, attempted aggravated criminal sodomy is a lesser included offense of the charged crime of aggravated criminal sodomy. See *State v. Gaona,* 293 Kan. 930, 951-52, 270 P.3d 1165 (2012).

Next, we consider whether an instruction on the lesser included offense was factually appropriate to the case. In *Williams,* we explained the analytical standard for this determination by stating:

"[T]he giving of lesser included crime instructions is not a matter of discretion with the trial judge. K.S.A. 22-3414(3) directs that 'where there is some evidence which would reasonably justify a conviction of some lesser included crime . . . , the judge *shall* instruct the jury as to the crime charged and any such lesser included crime.'" (Emphasis added.) *Williams,* 295 Kan. at 521-22.

We explained this further in *Plummer* and also stated the standard of review to be applied on appeal:

"[A] district court does not err in refusing to give a lesser included offense instruction on a crime which is unsupported by the evidence in that particular case. Such an inquiry is closely akin to the sufficiency of the evidence review frequently performed by appellate courts in criminal cases where ' "the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." ' *State v. McCaslin*, 291 Kan. 697, 710, 245 P.3d 1030 (2011) (quoting *State v. Drayton*, 285 Kan. 689, 710, 175 P.3d 861 [2008])." *Plummer*, 295 Kan. at 161-62.

To place the application of this standard into the context of this case, we begin with Breeden's arguments. He suggests that attempted aggravated criminal sodomy should have been instructed on because Leslie did not know whether L.B. was wearing underwear, which could have been a barrier to the completion of the crime. Breeden builds this argument from Leslie's testimony that L.B. pulled his pants up when Leslie entered the room, but Leslie was not sure if L.B. was wearing underwear. Breeden also points out that L.B. stated he did not pull his pants up until his mother called for him, which could indicate that what Leslie actually saw was L.B. in underpants that had never been pulled down. Further, Leslie testified he was not sure what he saw but he saw enough to make him believe Breeden was trying to commit a crime. Breeden contends that a "rational factfinder might [merely] conclude that [Breeden] made an overt act toward engaging in oral contact, but that L.B.'s underwear and [Leslie's] arrival prevented the completion of the offense."

These arguments do not point to evidence that would justify a conviction for attempted aggravated criminal sodomy. Even if we accept Breeden's factual premise that there is some evidence that L.B. was wearing underwear that was never pulled down, this does not mean there was merely an attempt. Boys' underwear is constructed so that it would still have been possible for Breeden to sodomize L.B. while L.B. was wearing underwear. Further, while Leslie could not verify a completed crime, both L.B. and Breeden stated that the crime was committed, not attempted. L.B. clearly

testified that Breeden made oral contact with his genitalia. More critically, Breeden admitted in his recorded statement to law enforcement officers that he made oral contact with the male genitalia of L.B. for approximately 60 seconds. According to Breeden, he stopped because he did not think what he was doing was right, and he specifically denied stopping because he had been interrupted. See K.S.A. 21-3501(2) (defining one form of "sodomy" as the "oral contact of the male genitalia"); *State v. Hernandez*, 294 Kan. 200, 204, 273 P.3d 774 (2012) ("It is a legal impossibility to both attempt the commission of a crime and complete the commission of the same crime, because the failure to complete commission of the crime is an element of attempt.").

Simply put:

"[P]ursuant to the language of K.S.A. 22-3414(3), a lesser included offense instruction is only required 'where there is some evidence which would reasonably justify a conviction of some lesser included crime.' Therefore, a district court does not err in refusing to give a lesser included offense instruction on a crime which is unsupported by the evidence in that particular case." *Plummer*, 295 Kan. at 161.

And in this case, the evidence does not support the giving of an instruction on attempted aggravated criminal sodomy; in other words, an instruction on attempted aggravated criminal sodomy was not factually appropriate in this case. This means the trial court did not err by failing to give a lesser included offense instruction regarding attempt, and we need not discuss the reversibility step of the *Williams'* analysis.

Breeden also contends that the trial court's failure to instruct on the lesser included offense violated his constitutional rights to due process and trial by jury under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. As the State points out, Breeden raises this argument for the first time on appeal. Supreme Court Rule 6.02(a)(5) (2012 Kan. Ct. R. Annot. 38) requires an appellant to explain why an issue that was not presented to the trial court should be considered for the first time on appeal. Breeden fails to do so. Because the issue was not properly preserved under our rules, we decline to address the question.

ISSUE 2: *The Trial Court Did Not Err By Failing to Give a Limiting Instruction*

At trial, L.B. testified that Breeden threatened to kill him, and L.B.'s mother testified L.B. told her Breeden had "punched him in the stomach and threw him on the bed and held him down and started sucking his [penis]." Breeden claims this testimony is evidence of prior crimes—criminal threat and battery—that is governed by K.S.A. 60-455 and this court's caselaw regarding application of that statute. That caselaw holds that a judge who admits K.S.A. 60-455 evidence "to avoid error, . . . must give a limiting instruction informing the jury of the specific purpose for admission." *State v. Gunby*, 282 Kan. 39, Syl. ¶ 3, 144 P.3d 647 (2006). After the *Gunby* decision and before the trial in this case, K.S.A. 60-455 was amended. L. 2009, ch. 103, sec. 12. The parties to this appeal do not discuss the effect of these amendments. In fact, the parties do not even discuss whether K.S.A. 60-455 applies in this case. Even though the parties have ignored these threshold issues, some discussion is necessary to prevent confusion in future cases that attempt to apply this decision.

A. *Application of K.S.A. 2012 Supp. 60-455 and* Gunby *in this Case*

The starting point is the statute. Because K.S.A. 2012 Supp. 60-455 is identical to the 2009 version (except for applicable citations to repealed and recodified criminal statutes), which was in effect at the time of Breeden's trial, we will refer to the 2012 Supplement for ease of discussion. The portions of K.S.A. 2012 Supp. 60-455 relevant to our discussion provide:

"(a) Subject to K.S.A. 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion.

"(b) Subject to K.S.A. 60-445 and 60-448, and amendments thereto, such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

. . . .

"(d) Except as provided in K.S.A. 60-445, and amendments thereto, in a criminal action in which the defendant is accused of a sex offense under articles 34, 35 or 36 of chapter 21 of the Kansas Statutes Annotated, prior to their repeal, or articles 54, 55 or 56 of chapter 21 of the Kansas Statutes Annotated, or K.S.A. 2012 Supp. 21-6104, 21-6325, 21-6326 or 21-6418 through 21-6421, and amendments thereto, evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative.

. . . .

"(g) As used in this section, an 'act or offense of sexual misconduct' includes:

(1) Any conduct proscribed by article 35 of chapter 21 of the Kansas Statutes Annotated, prior to their repeal, or article 55 of chapter 21 of the Kansas Statutes Annotated, or K.S.A. 2012 Supp. 21-6419 through 21-6421, and amendments thereto;

(2) the sexual gratification component of aggravated human trafficking, as described in subsection (a)(1)(B) and (a)(2) of K.S.A. 21-3447, prior to its repeal, or subsection (b)(1)(B) or (b)(2) of K.S.A. 2012 Supp. 21-5426, and amendments thereto;

(3) exposing another to a life threatening communicable disease, as described in subsection (a)(1) of K.S.A. 21-3435, prior to its repeal, or subsection (a)(1) of K.S.A. 2012 Supp. 21-5424, and amendments thereto;

(4) incest, as described in K.S.A. 21-3602, prior to its repeal, or subsection (a) of K.S.A. 2012 Supp. 21-5604, and amendments thereto;

(5) aggravated incest, as described in K.S.A. 21-3603, prior to its repeal, or subsection (b) of K.S.A. 2012 Supp. 21-5604, and amendments thereto;

(6) contact, without consent, between any part of the defendant's body or an object and the genitals, mouth or anus of the victim;

(7) contact, without consent, between the genitals, mouth or anus of the defendant and any part of the victim's body;

(8) deriving sexual pleasure or gratification from the infliction of death, bodily injury or physical pain to the victim;

(9) an attempt, solicitation or conspiracy to engage in conduct described in paragraphs (1) through (8); or

(10) any federal or other state conviction of an offense, or any violation of a city ordinance or county resolution, that would constitute an offense under article 35 of chapter 21 of the Kansas Statutes Annotated, prior to their repeal, or article 55 of chapter 21 of the Kansas Statutes Annotated, or K.S.A. 2012 Supp. 21-6419 through 21-6421, and amendments thereto, the sexual gratification component of aggravated human trafficking, as described in subsection (a)(1)(B) and (a)(2) of K.S.A. 21-3447, prior to its repeal, or subsection (b)(1)(B) or (b)(2) of K.S.A. 2012 Supp. 21-5426, and amendments thereto; incest, as described in K.S.A. 21-3602, prior to its repeal, or subsection (a) of K.S.A. 2012 Supp. 21-5604, and amendments thereto; or aggravated incest, as described in K.S.A. 21-3603, prior to its

repeal, or subsection (b) of K.S.A. 2012 Supp. 21-5604, and amendments thereto, or involved conduct described in paragraphs (6) through (9)."

Subsections (a) and (b) of 60-455 are substantively identical to the provision in place before the 2009 amendments; the only alterations are stylistic. The remainder of the amended statute is new and reflects the response to this court's suggestion that the legislature should "examine the advisability of amend[ing] K.S.A. 60-455" to specifically address other crimes evidence in sex crime prosecutions. *State v. Prine*, 287 Kan. 713, 737, 200 P.3d 1 (2009) (*Prine I*).

One of the carryover provisions, specifically subsection (a), is applicable to the threshold question of whether K.S.A. 60-455 has any application in this case. That subsection limits application of the statute to situations involving "evidence that a person committed a crime or civil wrong on a specified occasion" to infer a person has the disposition or a propensity to "commit[] another crime or civil wrong *on another specified occasion*." (Emphasis added.) K.S.A. 2012 Supp. 60-455(a). Here, the "other crimes" of criminal threat and battery occurred on the same occasion as the charged crime of aggravated criminal sodomy rather than on another occasion. As we noted in *State v. Peppers*, 294 Kan. 377, 389, 276 P.3d 148 (2012),"[o]ur decision in *Gunby* eliminated res gestae as an *independent basis* for the admission of evidence. It did not eliminate the admission of evidence of events surrounding a commission of the crime under the applicable rules of evidence." We need not unravel the interplay of these concepts in this appeal, however, because the State has not questioned the applicability of 60-455. Consequently, like the parties to this appeal, we will assume, without deciding, that 60-455 applies. Nevertheless, we point out the unresolved question so that this case is not cited as support for application of a rule that was not meant to be determined by this decision.

The other threshold question that is not discussed by the parties is whether the *Gunby* analysis applies in light of the 2009 amendments regarding other crimes evidence in sex crime cases. The significance of this question is revealed by our recent decision in

*State v. Prine*, 297 Kan. 460, Syl. ¶ 4, 303 P.3d 662 (2013) (*Prine II*), in which we held the *Gunby* holding that requires a limiting instruction does not apply if evidence of acts or offenses of sexual misconduct is admitted under K.S.A. 2009 Supp. 60-455(d) in a sex crime prosecution. In reaching this conclusion we contrasted the provisions considered in *Gunby*, which are now found in K.S.A. 2012 Supp. 60-455(a) and (b), with the provisions now found in K.S.A. 2012 Supp. 60-455(d), stating:

"The basic prohibition contained in the original statute, now subsection (a), is straightforward: Evidence that a defendant committed a crime or civil wrong on a specified occasion is generally inadmissible to prove that person's disposition or propensity to commit the charged crime. As a rule of exclusion, the prohibition on propensity evidence is based on the principle that such evidence is irrelevant and unduly prejudicial; and, historically, the rule has been strictly enforced. See *State v. Gunby*, 282 Kan. 39, 50, 144 P.3d 647 (2006) (citing cases).

"But the legislature's intention to relax the prohibition on evidence of other sexual misconduct to show propensity, indeed, and 'any matter to which it is relevant and probative' in sex crime cases is explicit in the statute's new subsection (d)." *Prine II*, 297 Kan. at 475-76.

We further explained the impact of subsection (d)'s broad allowance of other sexual misconduct evidence to show propensity on the rule requiring a limiting instruction, stating:

"[W]hen evidence was admitted under the [prior version of the] statute, in order to avoid the jury's consideration of the evidence for prohibited propensity, we required a limiting instruction listing the material facts in issue for which the evidence could be considered. See *Prine I*, 287 Kan. at 724-25. Although neither party challenges the continuation of this judicially created safeguard, its obsolescence under the amended statute is clear. In a sex crime prosecution governed by new subsection (d), there remains no reason to tell jurors to ignore the bearing prior sexual misconduct may have on the defendant's propensity to commit the charged crime or crimes. If other sex crimes or civil wrongs are relevant, *i.e.*, material and probative of propensity, the jury may consider them for that. We no longer need the workaround the limiting instruction hoped to ensure." *Prine II*, 297 Kan. at 478-79.

Hence, Breeden's argument fails if subsection (d) applies to this case. That provision, now found in K.S.A. 2012 Supp. 60-455(d) and quoted above, applies only if (1) "the defendant is accused of a sex offense" and (2) there is "evidence of the defendant's commission of another act or offense of sexual misconduct." Here, the

first requirement is met because Breeden was accused of a sex offense. But it is questionable that the second requirement is satisfied because the evidence of other crimes or civil wrongs that Breeden points to relate to a threat and a nonsexual battery, a punch to L.B.'s abdomen. See K.S.A. 2012 Supp. 60-455(g) (defining " 'act or offense of sexual misconduct' "). Given that and the fact the State has not suggested to us that K.S.A. 2012 Supp. 60-455(d) applies in this case, we will not apply subsection (d). Instead, our analysis is governed by the provisions discussed in *Gunby* and other cases imposing the requirement of a limiting instruction. Nothing in K.S.A. 2012 Supp. 60-455 or *Prine II* suggests a reason for departing from the *Gunby* holding in cases other than those controlled by K.S.A. 2012 Supp. 60-455(d). Hence, we hold a trial court judge who admits K.S.A. 2012 Supp. 60-455(b) evidence must give a limiting instruction informing the jury of the specific purpose for admission of the evidence in order to avoid error.

### B. *A Contemporaneous Objection to Other Crimes Evidence Not Required to Preserve Jury Instruction Issue*

We turn to the only argument made by the State in response to Breeden's argument that the trial court erred in failing to give a limiting instruction: The State merely points out that Breeden failed to object to the admission of this other crimes evidence at trial. Therefore, according to the State, he failed to preserve an evidentiary issue for appeal. See K.S.A. 60-404 (verdict or judgment shall not be reversed "by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection"); *State v. King*, 288 Kan. 333, 336, 204 P.3d 585 (2009) (compliance with K.S.A. 60-404 required to preserve evidentiary issues for appellate review). The State also argues that Breeden should not be able to "evade" the requirements of K.S.A. 60-404 by framing the issue as a jury instruction error. According to the State, the failure to make the evidentiary objection resulted in a waiver of Breeden's argument regarding the instruction as well. While we agree with the State to some extent, we conclude Breeden can raise an argument regarding the trial court's failure to give

a limiting instruction even if he did not object to the admission of the other crimes evidence.

To explain more fully, our agreement with the State is limited to concluding that Breeden waived a very short argument he inserts in his appellate brief. In passing, Breeden argues the evidence regarding the battery and threat "does not seem relevant to any disputed material fact. Mr. Breeden's defense was a general denial, so intent and other issues of mental state were not in dispute." As the State appropriately points out, this relevancy objection cannot be considered for the first time on appeal. See K.S.A. 60-404; *King*, 288 Kan. at 336. Consequently, we will not consider Breeden's evidentiary argument.

Nor would we allow Breeden to merely disguise an evidentiary argument as an instructional issue. See *State v. Rojas-Marceleno*, 295 Kan. 525, 538, 285 P.3d 361 (2012) (refusing to consider issue framed as error in failing to give limiting instruction; concluding arguments were merely a challenge to the admission of other crimes evidence where argument was that the " 'jury should have been instructed to disregard' the evidence because the evidence was prejudicial and irrelevant").

Here, however, Breeden does more than assert an evidentiary objection or disguise his evidentiary argument as an instructional issue. Other than this brief reference to relevancy, Breeden focuses on the trial court's failure to give a limiting instruction as required by *Gunby* and subsequent cases. Specifically, Breeden argues the trial court "should have instructed the jury that evidence had been admitted tending to prove that the defendant committed crimes other than the crime charged, and that the jury was not to consider that evidence of Mr. Breeden's propensity to commit a criminal act." Breeden further argues the trial court's failure to give the instruction was clearly erroneous.

These arguments are distinct from any complaint Breeden may have regarding the admission of evidence. Because the issues are distinct, we do not agree with the State's assertion that the failure to object to the admission of the other crimes evidence waives an appellate argument regarding the failure to give a limiting instruction. There are several reasons for this conclusion.

First, the Kansas Legislature has distinguished between the failure to object to the admissibility of evidence and the failure to object to an instruction and has enacted different preservation rules for the two situations. As we have noted in our summary of the State's argument, K.S.A. 60-404 requires a party to timely object to the admission of evidence in order to seek reversal of a judgment based on its erroneous admission. K.S.A. 60-404 does not address jury instructions, however, even if the instruction is related to evidence that was admitted. Instead, jury instructions are addressed in K.S.A. 22-3414(3), which, as we discussed in the previous issue, provides in part that "[n]o party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto . . . or the failure to give an instruction is clearly erroneous." Hence, unlike a failure to object to evidence, a failure to object to an instruction does not bar appellate review of the instruction. It does, however, raise the persuasive bar the complaining party must hurdle on appeal; the appellate court must be convinced the instruction is clearly erroneous. See *State v. Williams*, 295 Kan. 506, 510, 515-16, 286 P.3d 195 (2012). Neither K.S.A. 60-404 nor other statutes support the State's position.

Second, this court has distinguished the two situations when considering K.S.A. 60-455 issues. In evidentiary situations, this court has adhered to the K.S.A. 60-404 mandate. See, *e.g., State v. Holman*, 295 Kan. 116, 127, 284 P.3d 251 (2012) ("failure to specifically and contemporaneously object at trial to the admission of the uncharged crime evidence offered under K.S.A. 60-455 precludes appellate review"). On the other hand, no objection requirement has been imposed as a condition to preserving an instructional issue, including one relating to admission of K.S.A. 60-455 evidence. Rather, in *Gunby* and in subsequent cases applying *Gunby*, this court has held that a trial court is to instruct the jury on the specific purpose for admission "whenever 60-455 evidence comes in." *State v. Reid*, 286 Kan. 494, 503, 186 P.3d 713 (2008) (citing *State v. Garcia*, 285 Kan. 1, 12, 169 P.3d 1069 [2007]; *Gunby*, 282 Kan. at 48, 56-57); but see *Prine II*, 297 Kan. 460, Syl. ¶ 4 (when acts or offenses of sexual misconduct are admitted under K.S.A. 2009 Supp. 60-455[d] in a sex crime prosecution, the trial

court need not give a limiting instruction). These holdings have not been restricted to situations where 60-455 evidence comes in *over objection*. In fact, in *Gunby*, we stated that although a trial court should give a limiting instruction, "the failure to do so, though error, will no longer demand automatic reversal. Where the complaining party neither requested the instruction nor objected to its omission, the failure to give the instruction will be reversible only if clearly erroneous." *Gunby*, 282 Kan. at 58. Thus, the caselaw of this court does not support the State's argument that Breeden failed to preserve an appellate issue regarding the failure to give a required K.S.A. 2012 Supp. 60-455(b) limiting instruction by failing to object to the admission of the 60-455 evidence.

Third, restricting appellate enforcement of our *Gunby* instruction requirement to only those cases where a party has objected to the admission of the 60-455 evidence would be contrary to the overarching purpose of the limiting instruction, which is to " 'eliminate the danger that the evidence will be considered to prove the defendant's mere propensity to commit the charged crime.' " *Reid*, 286 Kan. at 503 (quoting *Gunby*, 282 Kan. at 48). This danger arises even if the K.S.A. 2012 Supp. 60-455(b) evidence is unequivocally admissible and a party could not state a good-faith objection to the evidence. In other words, even admissible K.S.A. 2012 Supp. 60-455(b) evidence carries the potential of suggesting to a juror that the defendant probably committed the charged act because he or she has committed other crimes or civil wrongs. Our caselaw demands that jurors be instructed not to adopt this mindset. *Cf. Prine II*, 297 Kan. 460, Syl. ¶ 3. (interpreting K.S.A. 2012 Supp. 60-455[d] to allow the admission of prior sexual misconduct as evidence of propensity in certain sex offense prosecutions where relevant and probative).

Fourth, we decline to adopt a rule that would require a party to assert an objection to admissible evidence—an objection that would be frivolous—in order to preserve a request for a K.S.A. 2012 Supp. 60-455(b) limiting instruction.

We, therefore, hold that the right to challenge the lack of a K.S.A. 2012 Supp. 60-455(b) limiting instruction is not based on whether a party has objected to the admission of the evidence that

is the subject of the instruction, and a failure to object to the admission of the evidence does not waive the right to raise an issue on appeal regarding whether the failure to give a limiting instruction was clearly erroneous.

In reaching this holding, we are mindful that various Court of Appeals panels have held that the failure to object to the admission of 60-455 evidence also waives any appellate issue regarding the failure to give a limiting instruction. See, *e.g.*, *State v. Whetstone*, 43 Kan. App. 2d 650, 653-54, 229 P.3d 399 (2010), *rev. granted* January 20, 2012; *State v. Charles*, No. 105,148, 2012 WL 2325877, at *8 (Kan. App. 2012) (unpublished opinion), *rev. granted* 297 Kan. 1249 (2013); *State v. Praylow*, No. 105,711, 2012 WL 1072762, at *10 (Kan. App. 2012) (unpublished opinion), *rev. denied* 296 Kan. 1134 (2013); *State v. Case*, 104,464, 2011 WL 3891885, at *3 (Kan. App. 2011) (unpublished opinion), *aff'd on remand* (2014); *State v. Hood*, 103,378, 2011 WL 2793234, at *6 (Kan. App. 2011) (unpublished opinion), *rev. granted* 293 Kan. 1110 (2012); *State v. Gonzalez*, No. 99,654, 2009 WL 2144022, at *2 (Kan. App. 2009) (unpublished opinion), *rev. denied* 290 Kan. 1098 (2010); *State v. Elmore*, No. 99,453, 2009 WL 929089, at *4 (Kan. App. 2009) (unpublished opinion), *rev. denied* 291 Kan. 913 (2010); *State v. Rutledge*, No. 98,396, 2008 WL 4849123, at *10 (Kan. App. 2008) (unpublished opinion), *rev. denied* 288 Kan. 835 (2009); *State v. McKinney*, No. 96,829, 2007 WL 2915581, at *10 (Kan. App. 2007) (unpublished opinion), *rev. denied* 286 Kan. 1183 (2008). None of these decisions explain the rationale for conflating the preservation consideration for the evidentiary and instructional issues. As we have indicated, we find several reasons for maintaining a distinction and, consequently, we overrule the holdings in these cases.

C. *Failure to Give Limiting Instruction in This Case Was Error But Not Reversible Error*

Hence, we will consider Breeden's argument that the trial court committed clear error by failing to give a limiting instruction in this case, applying the *Plummer* and *Williams* framework to the analysis.

We begin with whether a K.S.A. 2012 Supp. 60-455(b) instruction was legally and factually appropriate. See *Williams*, 295 Kan. at 521; *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012). As our previous discussion revealed, we are assuming due to the lack of argument that a limiting instruction was required under *Gunby* and its progeny.

Given that there was assumed error, we must next review the entire record to determine if the error is reversible. This requires us to make a de novo determination of whether we are firmly convinced the jury would have reached a different verdict had a limiting instruction been given. *Williams*, 295 Kan. at 515-16; see *State v. Trujillo*, 296 Kan. 625, 630-31, 294 P.3d 281 (2013) (emphasizing that clearly erroneous inquiry involves a de novo review of the entire record; holding that there is no practical difference between *Williams'* standard and past statements that an instruction is clearly erroneous only if " 'the reviewing court is firmly convinced that there is a real possibility the jury would have returned a different verdict if the instruction had been given' "; and rejecting continued use of "real possibility" language because of potential confusion with harmless error standard in *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

Applying the standard to the facts of this case, we are firmly convinced that the jury would not have reached a different verdict had a limiting instruction been given and, therefore, are not persuaded by Breeden's argument that the failure to give the instruction was clearly erroneous. In making this argument, Breeden notes the evidence of the threat was used by the State to explain, at least in part, the reason for L.B.'s initial reluctance to tell his mother what happened. But Breeden does not explain why, even if a limiting instruction had been given, the jury would not have been allowed to consider the evidence for this purpose. Additionally, Breeden complains that the State used the testimony of both the threat and the battery to paint Breeden "as a violent person, one who could harm a child because he had threatened violence and backed it up with a punch." While this danger exists, neither of the other crimes points specifically to a propensity to commit the charged crime of sodomy. Thus, neither of these points causes

us to conclude Breeden was prejudiced. In addition, even if there was some slight prejudice, we are convinced the impact of that prejudice on the verdict would have been minimal in light of Breeden's confession.

In light of the overwhelming evidence, including Breeden's confession, we conclude the failure to give a limiting instruction was not clearly erroneous.

ISSUE 3: *Breeden's Constitutional Right to Testify Was Not Violated*

Next, Breeden argues for the first time on appeal that his constitutional right to testify was violated because the record does not show that the trial court advised him of his right to testify or that he knowingly waived it. The State contends a trial court is not required to advise a defendant of his or her right to testify or make a record of a waiver of that right, citing *Taylor v. State*, 252 Kan. 98, Syl. ¶ 5, 843 P.2d 682 (1992). In addition, the State argues that the trial transcript shows the court did address Breeden's right to testify on the record, the court received an affirmative response from Breeden that he understood this right, and at that time, Breeden and defense counsel were still discussing whether he would testify.

Like the prior issues, this issue is raised for the first time on appeal. Breeden recognizes this and, in his appellate brief, argues it is appropriate to consider the issue for the first time on appeal because it involves a constitutional issue that is "purely [a] legal question, the consideration of which is necessary to prevent the denial of [Breeden's] fundamental right to testify." See *State v. Puckett*, 230 Kan. 596, 598-99, 640 P.2d 1198 (1982) (recognizing three circumstances in which an appellate court may consider a constitutional issue raised for the first time on appeal). The State does not dispute the applicability of these exceptions. In addition, in a recent decision filed after the briefs in this appeal were submitted, this court found under similar facts that these arguments warranted the consideration of the issue for the first time on appeal. See *State v. Anderson*, 294 Kan. 450, 465, 276 P.3d 200

(2012) (accepting defense argument that issue involved defendant's fundamental right to testify and a legal question).

After concluding the argument could be considered, the *Anderson* court rejected the argument. In doing so, we reaffirmed our decision in *Taylor*, in which this court held:

> "A trial court has no duty sua sponte to address a silent defendant and inquire whether he or she knowingly and intelligently waives the right to testify. An express waiver, on the record, is not necessary because a defendant's conduct provides a sufficient basis from which to infer that the right to testify is waived. There is a danger that by asking a defendant if he or she is aware of his right to testify, a trial court may inadvertently influence a defendant to waive the equally fundamental right against self-incrimination." *Taylor*, 252 Kan. 98, Syl. ¶ 5.

Breeden does not present any new persuasive arguments or any reason we should reexamine our recent decision in *Anderson* and our long-standing decision in *Taylor*. We, therefore, hold Breeden's constitutional right to testify was not violated even if the trial judge, who advised Breeden of his rights, failed to obtain an explicit waiver of the right to testify on the record.

ISSUE 4: *Breeden's Life Sentence Is Not a Cruel and Unusual Punishment*

Next, Breeden argues his hard 25 life sentence imposed under Jessica's Law, specifically K.S.A. 21-4643(a)(1)(D), constitutes cruel and/or unusual punishment under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights.

As with the previous issues, we must first address whether these arguments have been fully preserved. At the sentencing hearing, Breeden only argued the constitutionality of his sentence under § 9 of the Kansas Constitution Bill of Rights; he did not argue or brief a federal constitutional challenge to his sentence before the sentencing court. Consequently, the court only made findings regarding the state constitutional challenge. In addition, Breeden only briefly references the Eighth Amendment in his appellate brief and in those arguments does not explain why we should consider the Eighth Amendment for the first time on appeal. Hence, he has failed to preserve and present his Eighth Amendment ar-

guments. See Supreme Court Rule 6.02(a)(5) (2012 Kan. Ct. R. Annot. 38) (requiring an appellant to explain why an issue not raised in district court should be considered for the first time on appeal).

Breeden presented and preserved his arguments under § 9 of the Kansas Constitution Bill of Rights, however. Under that provision, "a punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." *State v. Gomez*, 290 Kan. 858, Syl. ¶ 9, 235 P.3d 1203 (2010). To aid in administering this principle, this court set out three factors in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), stating:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense."

Ultimately, one of these factors "may weigh so heavily that it directs the final conclusion," but "consideration should be given to each prong of the test." *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 (2008).

The first factor is factual and the other two raise legal questions. See *State v. Berriozabal*, 291 Kan. 568, 591, 243 P.3d 352 (2010); *Ortega-Cadelan*, 287 Kan. at 161. Because there are both legal and factual components, a bifurcated standard of review applies: An appellate court reviews the factual underpinnings of the sentencing court's findings under a substantial competent evidence standard and reviews the sentencing court's ultimate legal conclusion drawn from those facts under a de novo standard. *State v. Woodard*, 294 Kan. 717, 720, 280 P.3d 203 (2012).

*First* Freeman *Factor*

The first *Freeman* factor requires us to consider the nature of the offense and the character of the offender. The sentencing judge in this case, who had presided over the jury trial, believed that Breeden had committed psychological violence that would have lifelong consequences for L.B.: "[Y]ou can't ignore the violent nature of the offense if you include consequences to the victim in the analysis. So I think this was a violent offense." In addition, the judge found the extent of the culpability to be solely attributable to Breeden. Finally, the judge considered the penological purposes of the prescribed punishment and concluded they justified the lifetime sentence.

Breeden disputes the judge's findings, arguing the sexual contact was brief, there was no physical harm, and evidence suggests L.B. solicited the contact. These arguments are not persuasive.

While the incident was brief and there is no evidence of physical harm to L.B., the State presented evidence at the sentencing hearing that L.B. has suffered psychological damage. Among other things, there was evidence that L.B. has to be reassured on a regular basis that Breeden remains in jail because he fears that Breeden is going to come get him. Evidence was also presented that L.B. had been receiving regular therapy and that the incident had caused nightmares. The therapist opined that the full extent of L.B.'s injury will not be known until he is a teenager.

Additionally, regarding the violent nature of the offense, we note that the legislature has categorized aggravated criminal sodomy as a sexually violent crime. See K.S.A. 22-3717(d)(1)(G)(2)(E) (parole or postrelease supervision; meaning of "sexually violent crime"). Consistent with this conclusion, this court has recognized that "society has a penological interest in punishing those who commit sex offenses against minors because they 'present a special problem and danger to society' and their actions produce ' "particularly devastating effects" ' on victims, including physical and psychological harm. [Citations omitted.]" *State v. Mossman*, 294 Kan. 901, 909, 281 P.3d 153 (2012). Simply because Breeden could have committed the act more violently does not detract from the fact that he committed a "sexually violent offense."

The other aspect of Breeden's arguments—that L.B. solicited the contact—has no legal bearing. L.B. was 10 years old at the time of the incident and Kansas law treats 10-year-old children as minors and "recognizes them as deserving of the State's protection and legally incapable of consenting to sexual intercourse." *Mossman*, 294 Kan. at 910 (citing K.S.A. 21-3502[a]; K.S.A. 21-3520[a]; K.S.A. 21-3522[a]); see *State v. Limon*, 280 Kan. 275, 297, 122 P.3d 22 (2005) ("Certainly, the State has a significant interest in prohibiting sex between adults and minors, not only because of the potentially coercive effect of an adult's influence but also because of concern regarding the minor's ability to arrive at an informed consent."). Indeed, adults who come into contact with minors are "expected to protect the child from the child's poor judgment, not take advantage of that poor judgment." *Mossman*, 294 Kan. at 910. In this case, if Breeden's allegation that L.B. solicited the contact is true, Breeden, as an adult who was nearly 11 years older than L.B., should have rejected the child's demands. Accordingly, Breeden's attempt to minimize the seriousness of his crime fails.

In summary, there is substantial competent evidence to support the sentencing court's factual findings. Other considerations relevant to the first *Freeman* factor also support the sentencing court's legal conclusion and weigh against Breeden's argument. The State presented evidence of prior sexual misconduct by Breeden when he was approximately 12 years old and, in his statement to law enforcement officers, Breeden admitted that he needs help so he will not reoffend. This evidence bears on one of the penological purposes for the hard 25 life sentence imposed under Jessica's Law: The legislative history of Jessica's Law reveals an interest in using incarceration as a means of protecting minors from sexual offenders. See *State v. Spencer*, 291 Kan. 796, 823-24, 248 P.3d 256 (2011) (quoting House J. 2006, p. 1323). Consistent with the legislative rationale, the United States Supreme Court has recognized society has "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class. The risk of recidivism posed by sex offenders is 'frightening and high.'" *Smith v. Doe*, 538 U.S. 84, 103, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003) (quoting *McKune v. Lile*, 536 U.S. 24, 34, 122 S. Ct.

2017, 153 L. Ed. 2d 47 [2002]), *reh. denied* 538 U.S. 1009 (2003); see *Mossman*, 294 Kan. at 909-10.

Hence, the nature of the offense, the degree of danger Breeden presents to society, the sexually violent nature of his offense, the psychological harm caused to L.B., Breeden's culpability for the injury, and the penological purposes of the prescribed punishment all weigh against Breeden's arguments regarding the first *Freeman* factor.

*Second* Freeman *Factor*

Breeden's arguments under the second *Freeman* factor have a stronger basis but still fall short of convincing us his sentence is unconstitutional. Under this factor, this court compares the Jessica's Law sentencing scheme for aggravated criminal sodomy with sentences for "more serious crimes" in Kansas. In this regard, Breeden argues that if he had been convicted of intentional second-degree murder in violation of K.S.A. 21-3402(a), the presumptive sentencing range would have been 165-155-147 months' imprisonment instead of life imprisonment. See K.S.A. 21-4704(a). He contends that punishing his conduct more severely than second-degree murder is shocking and outrageous.

The State acknowledges there are other serious crimes in Kansas, including second-degree murder and some other homicides, with less severe sentences under the Kansas Sentencing Guidelines Act, K.S.A. 21-4701 *et seq*. The State points out, however, that there are other nonhomicide crimes, including rape of an adult in violation of K.S.A. 21-3502 and aggravated kidnapping in violation of K.S.A. 21-3421, that also have guidelines sentences that are equal to or longer than second-degree murder in violation of K.S.A. 21-3402, voluntary manslaughter in violation of K.S.A. 21-3403, or involuntary manslaughter in violation of K.S.A. 21-3404. The State contends that the legislature recognized child sex crimes "as uniquely deserving of heightened punishments."

Similar arguments have been previously considered by this court. In *Woodard*, where the defendant had been sentenced to a hard 25 life sentence under Jessica's Law for aggravated indecent liberties with a child, we rejected the same argument that the Jess-

ica's Law sentence was unconstitutionally disproportionate to certain homicide crimes, stating:

"This argument suffers from several flaws. In the first place, it assumes that murderers necessarily receive more lenient sentences in Kansas than violators of Jessica's Law. This is not the case. In fact, the Kansas Criminal Code sets out a list of transgressions that constitute capital murder, which is an off-grid offense. K.S.A. 21-3439. Capital murder is subject to punishment by death. K.S.A. 21-4624. The penalty for homicide in Kansas may thus be much more severe than the penalties under Jessica's Law. See K.S.A. 21-4638; K.S.A. 21-4643. The fact that the penalty for certain categories of homicide may be less severe than the penalties for other, nonhomicide crimes does not automatically render the penalties for the nonhomicide crimes unconstitutional. There is no strict linear order of criminal activity that ranks all homicides as the most serious crimes and all nonhomicide crimes as less serious, with the corresponding penalties necessarily ranking in diminishing durations of imprisonment.

"Furthermore, as the State points out, Jessica's Law is not the only Kansas statute that provides for more severe penalties for nonhomicide crimes than for certain categories of homicide. Compare, *e.g.*, rape, K.S.A. 21-3502, and aggravated kidnapping, K.S.A. 21-3420, which are severity level 1 offenses, with reckless second-degree murder, K.S.A. 21-3402(b), which is a severity level 2 offense." *Woodard*, 294 Kan. at 723-24.

In *Woodard*, we concluded the Jessica's Law penalty for aggravated indecent liberties with a child was not disproportionately harsh when compared to punishments for other offenses in Kansas. *Woodard*, 294 Kan. at 724. Recently, in *State v. Seward*, 296 Kan. 979, 988, 297 P.3d 272 (2013), after discussing the holding in *Woodard*, we held: "This holds true for the rape [of an 11-year-old child] and aggravated criminal sodomy [of the same child] for which Seward pleaded guilty; both of these crimes are at least as serious as aggravated indecent liberties." We similarly reject Breeden's argument.

*Third* Freeman *Factor*

Under the third *Freeman* factor, this court compares the penalty under Jessica's Law for aggravated criminal sodomy with the penalties for the same offenses in other jurisdictions. *Freeman*, 223 Kan. at 367; see *Seward*, 296 Kan. at 988 (clarifying that the comparison must be between the "same" offenses, not "similar" offenses).

In this case, the sentencing court found that "there are facts that demonstrate that our penalty is comparable with punishments in other jurisdictions for this offense." This conclusion flowed from Breeden's concession that "[i]t appears that many states have adopted some form of 'Jessica's Law' imposing similar punishments as the sentences at issue . . . . This third factor, therefore, weighs in favor of the lifetime sentences."

Consistent with his position before the sentencing court, in his appellate brief Breeden does not present an argument that his sentence is disproportionate to sentences imposed for the same offense in other states. Thus, any challenge to the third *Freeman* factor before this court is deemed waived. See *Gomez*, 290 Kan. 858, Syl. ¶ 8 (to preserve an issue for appellate review, the party must present an argument; otherwise, the argument will be deemed abandoned).

Because none of the *Freeman* factors weighs in favor of Breeden's arguments, we hold that his life sentence with a mandatory minimum term of 25 years under K.S.A. 21-4643(a)(1)(D) does not constitute cruel and/or unusual punishment under § 9 of the Kansas Constitution Bill of Rights.

ISSUE 5: *The Sentencing Court Erred in Imposing Lifetime Post-release Supervision*

Breeden's final issue on appeal is that the sentencing court erred by entering a journal entry that stated Breeden was subject to life-time postrelease supervision rather than reflecting the sentence announced by the court during the hearing, which was a sentence of "life imprisonment with no possibility of parole until you have served 25 years." As the State concedes, this court has previously decided this issue in Breeden's favor, concluding that " '[a]n inmate who has received an off-grid indeterminate life sentence can leave prison only if the [Kansas Prisoner Review] Board grants the in-mate parole. Therefore, a sentencing court has no authority to or-der a term of [lifetime] postrelease supervision in conjunction with an off-grid indeterminate life sentence.' " *State v. Summers*, 293 Kan. 819, 832, 272 P.3d 1 (2012) (quoting *State v. Cash*, 293 Kan. 326, Syl. ¶ 2, 263 P.3d 786 [2011]).

Because the journal entry in this case inaccurately reflected the announced sentence and recorded an illegal sentence, we vacate the journal entry and remand with directions to enter a nunc pro tunc order that conforms the journal entry to the announced sentence. See K.S.A. 22-3504(1) (correction of sentence); *State v. Brown*, 295 Kan. 181, 215-16, 284 P.3d 977 (2012) (providing same relief for same error); *Abasolo v. State*, 284 Kan. 299, 304, 160 P.3d 471 (2007) ("where the sentence announced from the bench differs from the sentence later described in the journal entry, the orally pronounced sentence controls").

Conviction affirmed, sentence affirmed in part and vacated in part, and case remanded with directions.