No. 66,880

SHERWIN W. TAYLOR, *Appellant,* v. STATE OF KANSAS, *Appellee.*

(843 P.2d 682)

Opinion filed December 11, 1992.

*Geary N. Gorup,* of The Law Office of Geary N. Gorup, of Wichita, argued the cause and was on the brief for appellant.

*Debra S. Byrd,* assistant district attorney, argued the cause, and *Jeffrey E. Goering,* assistant district attorney, *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: Sherwin W. Taylor appeals from an order of the district court in a K.S.A. 60-1507 proceeding denying a new trial sought on the basis of ineffective assistance of counsel. Taylor was originally convicted of one count of aggravated robbery, K.S.A. 21-3427, and one count of felony murder, K.S.A. 1991 Supp. 21-3401(a)(1).

Taylor took a direct appeal of his convictions and this court affirmed. In *State v. Taylor*, No. 62,629, unpublished opinion filed December 8, 1989, we stated the facts:

"Several nights before he was killed, nineteen-year-old Michael Garcia played a game of pool with Donato Ornales III. To his misfortune Michael lost the game and a $1.00 bet. Michael told Ornales he would pay up the bet on July 21, 1987, to which Ornales agreed. Nevertheless, when Ornales saw Michael in the parking lot of the Golden Cue on July 14, he asked for his money. Michael replied that he got paid on July 21 and would pay the bet then. A few minutes later, Ornales and the defendant followed Michael into the Golden Cue.

"There is disputed evidence as to who entered the restroom first, but while in the restroom of the pool hall Ornales demanded money from Michael and threatened that his friend, Taylor, would 'take care' of Michael if he did not pay. At that point, Ornales pushed Michael. Michael tried to run out of the restroom but Taylor prevented his escape and hit Michael twice in the stomach. Ornales beat Michael with his fists and demanded money until Michael fell to the floor. Ornales then kicked Michael in the face, which caused his head to slam backward into the restroom wall and knocked Michael unconscious. As payment for the pool debt, Ornales took Michael's Swatch watch before leaving the restroom and fleeing from the Golden Cue.

"Michael was immediately taken to the hospital. He was in a combative condition, screaming in pain and holding his head. Early the next morning, surgery was required to relieve pressure on the brain due to the formation of a blood clot over the brain caused by a blow to the head or fall on a hard surface. The surgery was unsuccessful; on July 18, Michael was declared brain dead.

"On March 15, 1988, Taylor was convicted of aggravated robbery and first-degree murder of Michael Garcia under a theory of aiding and abetting."

On September 4, 1990, Taylor filed a K.S.A. 60-1507 motion. In his motion, Taylor alleged he was not afforded effective assistance of counsel because his trial attorney, Charles O'Hara, prevented him from testifying in his own behalf. Taylor further alleged O'Hara was ineffective because he failed to attempt to

suppress statements Taylor made to law enforcement officers and failed to object to the presentation of the statements at trial. Finally, Taylor alleged O'Hara failed to adequately investigate and present evidence concerning Ornales' acknowledgment that Taylor had taken no part in the robbery or injury of Garcia.

On May 10, 1991, the trial court conducted an evidentiary hearing on Taylor's 1507 motion. Taylor's wife, Kaye, testified she was present during several conversations which Taylor had with O'Hara. Kaye testified that at the initial meeting with O'Hara, it was assumed Taylor would testify in his own behalf. Kaye further stated that during Taylor's trial, towards the end of the State's case, she and Taylor met with O'Hara at O'Hara's office. Kaye stated O'Hara told them "the decision had been made that [Taylor] would not testify." Kaye testified that Taylor responded, "but I want to testify" and O'Hara replied it was "just an unwise decision so I'm going to say no." According to Kaye, O'Hara told Taylor it would be pointless for him to testify.

Kaye testified that the next day she was in the hallway of the courthouse when Taylor caught O'Hara by the arm and said, "[Y]ou have got to let me testify." O'Hara allegedly responded, "[N]o, I've already decided you will not testify." Kaye further testified that after O'Hara presented the defense's case in chief, Taylor again told his attorney he wanted to testify. Kaye did not hear O'Hara's reply, but she testified that she observed O'Hara shaking his head no.

Barbara Taylor, Taylor's mother, testified she had attended Taylor's trial and had witnessed the confrontation in the hallway between Taylor and O'Hara. Barbara stated O'Hara told Taylor there was no need for him to testify and that "it was a little late for him to testify." Barbara also testified that during the trial she saw Taylor lean toward O'Hara and say, "I would like to testify." O'Hara had responded, "[N]ot at this time, Sherwin, I don't think you should."

Beverly Hubbs, a friend of Kaye Taylor, testified she went with Kaye to O'Hara's office on numerous occasions after the trial and during the appeals process. Hubbs testified that on one occasion O'Hara stated he knew Kaye and Taylor did not agree with him regarding Taylor testifying at trial, but it did not matter because it was O'Hara's decision. On another occasion, Hubbs was present

when O'Hara stated the Taylors and he could not agree on whether Taylor should testify at trial, so O'Hara had "made the decision and that's all there was to it, period, he didn't wanna hear about it anymore."

Taylor's sister, Shirley Ferretti, also testified she attended Taylor's trial. Ferretti overheard Taylor express a desire to testify, but O'Hara said it was not in Taylor's best interest to testify. Taylor repeated his wish to testify, but O'Hara said "no."

Taylor testified that after his preliminary hearing he assumed he would testify at trial on his own behalf, but O'Hara indicated he wanted more information before he made that decision. The day before trial, Taylor told O'Hara he thought it would be best if he testified, and O'Hara made no response. Taylor further testified that several times during trial he told O'Hara he wanted to testify, but O'Hara was very adamant about him not testifying. According to Taylor, O'Hara didn't want Taylor to testify because it would introduce more variables into the trial.

O'Hara testified he had been an attorney for 15 years and most of his practice was devoted to criminal law. O'Hara testified he had had conversations with Taylor regarding whether he would testify. O'Hara admitted advising Taylor not to testify. O'Hara testified he specifically remembered asking Taylor at trial if he wanted to testify. Taylor, however, responded, "I'm gonna follow your advice, I'm not gonna testify." O'Hara also admitted he did not have any written documentation to indicate he had informed Taylor of his right to testify. O'Hara testified such was not his practice—"I know what the law is. I know he has a right to testify. And I told him. There's no doubt that I told him." O'Hara further testified:

"I told him it was his right [to testify] and his right alone. I have nothing to gain by forcing anyone not to testify. I mean, it doesn't matter to me. I mean, they're the ones on trial, not me.
. . . .
"[O]bviously it's a decision that every attorney has to look at in every case depending on the case as to whether [a defendant] should or shouldn't [testify]. And I discussed that and I have strong feelings depending on the case as to how it should go. And, in Mr. Taylor's case, it was kind of a close call, I thought really, but my advice in the end was for him not to testify. I didn't force him not to. I advised him that he could still do it if he wanted to."

O'Hara testified Taylor expressed a desire to testify at various stages of the prosecution. Taylor had stated he wanted to testify at the preliminary hearing, but O'Hara told him he should save his testimony for trial. O'Hara testified that occasionally during trial Taylor would state he wanted to testify in response to a State's witness' testimony. O'Hara explained Taylor could not testify at that point because it was not the defense's turn to present evidence.

O'Hara testified he felt Taylor understood what was happening. O'Hara specifically stated he never told Taylor he could not testify. Finally, O'Hara testified he always told Taylor he had the right to testify and that it was his decision, not O'Hara's.

Following the evidentiary hearing, the trial court made the following findings of fact:

"14. The Petitioner's proffer of what his testimony would have been had he testified at his own criminal trial would have offered an explanation of his statements to the police, and such testimony would have been offered for the purpose of showing a lack of knowing involvement or assistance in the crime or crimes of Mr. Ornales.

"15. The evidence presented in this action demonstrates a conflict of testimony concerning the conversations between the Petitioner and his trial counsel.

"16. The important conversation or conversations are not those which were held here at the courthouse during the course of the trial.

"17. The important conversations between the Petitioner and Mr. O'Hara were those conversations or that conversation that was held the evening before the State rested (and prior to the testimony at such trial on the following morning from Detective Abele regarding the lack of fingerprints), when the final decision was made whether or not the Petitioner would testify in his own behalf.

"18. It is more probably true than not that the Petitioner wished to testify.

"19. It is more probably true than not true that Mr. O'Hara did not want him to testify.

"20. It is more probably true than not true that the Petitioner followed his attorney's advice and decided not to testify even though he wanted to testify.

"21. The Petitioner understood that he had the right to testify."

The trial court then denied Taylor's 1507 motion, from which decision Taylor appeals.

I

The first issue on appeal is whether the trial court erred in

failing to find Taylor was denied his constitutional right to testify in his own behalf through ineffective assistance of counsel.

When a trial court considers a claim of ineffective assistance of counsel, it must follow the two-prong test established by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The *Washington* two-prong test was adopted by this court in *Chamberlain v. State,* 236 Kan. 650, 656-57, 694 P.2d 468 (1985). The test requires:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Washington,* 466 U.S. at 687.

An evidentiary hearing held pursuant to K.S.A. 60-1507 is a civil proceeding and, thus, governed by the rules of civil procedure insofar as applicable. Rule 183(a) (1992 Kan. Ct. R. Annot. 143). Rule 183(g) places the burden of proof upon the movant, who must establish his grounds for relief by a preponderance of the evidence. (1992 Kan. Ct. R. Annot. 143). Rule 183(j) also requires the trial court to make findings of fact and conclusions of law on all issues presented. (1992 Kan. Ct. R. Annot. 143). This requirement that the trial court make findings of fact and conclusions of law enables the appellate courts to determine whether the decision reached by the trial court "follows as a matter of law from the facts stated as its basis, and also whether the facts so stated have any substantial support in the evidence." *White v. State,* 201 Kan. 801, 804, 443 P.2d 182 (1968).

Thus, the standard for review of an appeal of a 1507 motion is the same as the standard required for other civil proceedings. That standard is well settled.

" 'Where the trial court has made findings of fact and conclusions of law, the function of this court on appeal is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law.' " *Gillespie v. Seymour,* 250 Kan. 123, 129, 823 P.2d 782 (1991) (quoting *Williams Telecommunications Co. v. Gragg,* 242 Kan. 675, 676, 750 P.2d 398 [1988]).

Furthermore, "[u]pon appellate review [the appellate court] accepts as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings of the trial judge." *Short v. Wise,* 239 Kan. 171, 178, 718 P.2d 604 (1986).

Taylor argues his four witnesses testified to conversations which tended to prove he did not understand his right to testify well enough to exercise it knowingly and willingly. Taylor also claims the only reasonable interpretation of the evidence is that even if O'Hara was correct in his belief that he properly advised Taylor regarding his right to testify, neither Taylor nor those around him understood.

It is the duty of the trial court to weigh the evidence presented and to pass on the credibility of the witnesses. *Wooderson v. Ortho Pharmaceutical Corp.,* 235 Kan. 387, 393, 681 P.2d 1038 (1984). Each witness who testified on Taylor's behalf was either a family member or a family friend. O'Hara testified he specifically remembered asking Taylor at trial if he wanted to testify. O'Hara testified Taylor said he wanted to testify but made those statements during the State's case when it was not Taylor's turn to present evidence. O'Hara further testified if Taylor had told him he wanted to testify, Taylor would have testified.

We find there is substantial competent evidence to support the trial court's finding of fact that Taylor understood he had a right to testify. Thus, the trial court's conclusions of law that Taylor had not been denied effective assistance of counsel and had not been denied his right to testify are supported by the facts. We hold the trial court did not err in failing to find Taylor was denied his constitutional right to testify in his own behalf.

## II

Next, Taylor raises the issue of whether the trial court erred in refusing to hold as a matter of law that a silent record cannot be sufficient to demonstrate a waiver of the right to testify in a criminal trial. Taylor contends the trial court should be required to make an inquiry, outside the presence of the jury, to determine whether the defendant in a criminal case is making a knowing and voluntary waiver of his right to testify. Taylor further argues that *State v. McKinney,* 221 Kan. 691, 561 P.2d 432 (1977), which

held such an inquiry by the trial court is unnecessary and inappropriate, should be overruled.

Taylor contends a procedure similar to the one used when a criminal defendant enters a plea of guilty or nolo contendere should be implemented to insure that a criminal defendant understands his or her right to testify and is voluntarily waiving that right. In order to protect a criminal defendant's rights under the Due Process Clause of the Fourteenth Amendment, K.S.A. 22-3210(a)(3) requires the trial court to personally address the defendant and determine whether "the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." When entering a plea in a felony case, the defendant must appear and plead personally, and a verbatim record of all proceedings is required. K.S.A. 22-3210(4)(b).

Similarly, in juvenile proceedings K.S.A. 38-1633(b) requires the district court to advise the juvenile of his rights before accepting an admission or denial of the allegations or a plea of nolo contendere. This includes advising the juvenile of his right to testify or to decline to testify. K.S.A. 38-1633(b)(5). Thus, in juvenile cases where a plea is entered, the trial court is not allowed to rely upon the juvenile's attorney to inform the juvenile of the right to testify. Instead, the trial court must instruct the juvenile defendant on the right to testify. *In re B.S.*, 15 Kan. App. 2d 338, 339, 807 P.2d 692 (1991).

In *State v. McKinney*, 221 Kan. 691, the defendant argued the trial court erred in failing to advise him of his right to testify in his own behalf. The defendant further contended the record must affirmatively show a waiver of his right to testify. 221 Kan. at 693. We concluded, however, that no such inquiry by the trial court was necessary or appropriate. We pointed out it would be difficult to balance such an inquiry with our existing rule that a prosecuting attorney cannot comment upon the defendant's failure to testify. 221 Kan. at 694.

This issue was addressed by the 9th Circuit Court of Appeals in *United States v. Martinez*, 883 F.2d 750 (9th Cir. 1989), *vacated on other grounds* 928 F.2d 1470 (9th Cir. 1991), *cert. denied* 115 L. Ed. 2d 1052 (1991). In *Martinez*, the defendant was charged with numerous drug offenses. Martinez expressed a desire to testify in his own behalf at trial. Martinez's attorney,

however, strongly opposed his desire to testify. Martinez did not testify and was subsequently convicted. Martinez secured a new attorney and moved for a new trial on the ground that he was denied his right to testify in his own behalf. The trial court denied the motion for new trial and Martinez appealed. 883 F.2d at 751-52.

On appeal, Martinez argued a waiver of the right to testify cannot be presumed from a silent record. 883 F.2d at 756. The court noted that all circuit courts addressing the issue have held that a trial court has no "duty sua sponte to address a silent defendant and inquire whether he knowingly and intelligently waives the right to testify." 883 F.2d at 760. The court stated that an express waiver, on the record, was not necessary because "[t]he defendant's conduct provided a sufficient basis from which to infer that the right to testify [had] been waived." 883 F.2d at 760. The court listed seven reasons for its holding:

"First, the right to testify is seen as the kind of right that must be asserted in order to be recognized. (Citation omitted.) Second, it is important that the decision to testify be made at the time of trial and that the failure to testify not be raised as an afterthought after conviction. [Citation omitted.] Third, by advising the defendant of his right *to* testify, the court could influence the defendant to waive his right *not to* testify, 'thus threatening the exercise of this other, converse, constitutionally explicit and more fragile right.' [Citation omitted.] Fourth, a court so advising a defendant might improperly intrude on the attorney-client relation, protected by the Sixth Amendment. [Citation omitted.] Fifth, there is danger that the judge's admonition would introduce error into the trial. [Citation omitted.] Sixth, it is hard to say when the judge should appropriately advise the defendant— the judge does not know the defendant is not testifying until the defense rests, not an opportune moment to conduct a colloquy. [Citation omitted.] Seventh, the judge should not interfere with defense strategy. [Citation omitted.]" (Emphasis in original.) 883 F.2d at 760.

We agree with the *Martinez* court. There is a danger that by asking a defendant if he is aware of his right to testify, a trial court may inadvertently influence a defendant to waive the equally fundamental right against self-incrimination. Thus, we adhere to *State v. McKinney.*

We hold the trial court did not err in refusing to hold, as a matter of law, that a silent record cannot be sufficient to demonstrate a waiver by the defendant of his right to testify in his own behalf.

The judgment of the district court is affirmed.

LOCKETT, J., concurring and dissenting: I agree with the majority's finding that there is substantial competent evidence to support the trial court's finding that Taylor understood he had a right to testify. I disagree with the majority's finding that there is a danger that by asking a defendant if he or she is aware of the right to testify, a court may inadvertently influence a defendant to waive the equally fundamental right against self- incrimination. I also disagree with the conclusion that pursuant to *State v. McKinney*, 221 Kan. 691, 561 P.2d 432 (1977), such an inquiry by the trial court would be inappropriate.

The right to testify is a basic right given all parties. The right not to testify is a right limited to those whose testimony would incriminate them. Individuals who have been charged with a crime have a number of fundamental constitutional rights. Basic constitutional rights can be relinquished only by the defendant; relinquishment of such a right must be intentional, and to be intentional it must be known to the one who gives up the right.

The *McKinney* court actually held, "Here the accused after full consultation with his counsel decided not to testify in his own behalf. No inquiry from the trial court was necessary or appropriate." 221 Kan. at 695. If the trial judge had merely asked Taylor, outside the presence of the jury, if he had discussed his right to testify with his attorney, there would have been no basis for this appeal or the requirement of an additional hearing to determine if Taylor's attorney had apprised him of that right. The most troubling aspect of the majority opinion is its finding that such an inquiry by a judge is inappropriate in this circumstance but appropriate where a statute requires the judge to ask if the defendant is waiving the right. The majority has not cited a single instance where a Kansas judge has inadvertently influenced a defendant to waive any right by asking a defendant if he or she had discussed that right with counsel.