NOT DESIGNATED FOR PUBLICATION

No. 121,589

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BIBIANA REYES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; AARON T. ROBERTS, judge. Opinion filed February 12, 2021. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Maurice Brewer*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., SCHROEDER and WARNER, JJ.

PER CURIAM: After the State rested its case in a jury trial against Defendant Bibiana Reyes for possession of methamphetamine with the intent to distribute and possession of drug paraphernalia, the Wyandotte County District Court quizzed Reyes about her decision to testify and to offer a guilt-based theory of defense conceding possession of the drugs and contraband. The Kansas Supreme Court disfavors that sort of judicial inquiry of criminal defendants. We presume the district court's intrusive questioning to be judicial error, but Reyes has failed to show actual prejudice calling into question the jury verdicts finding her guilty as charged.

1

Given the narrow issue on appeal, we may briefly sketch the underlying facts. A police officer stopped the motor vehicle in which Reyes was a passenger in October 2018 because it had expired tags. The officer asked Reyes why she seemed to be acting oddly, and she replied that she had an outstanding warrant. The officer ran a check on Reyes, confirmed the warrant, and arrested her. After her arrest, Reyes was searched. She had a plastic bag that contained 26.85 grams of methamphetamine, two pipes of the kind commonly used to ingest illegal drugs, and a digital scale. Reyes explained to a detective that although she sold methamphetamine from time to time when she needed money, the drugs she had that day were for her own use. She also said she likely would share some of the methamphetamine with her friends.

At the start of the jury trial in April 2019, Reyes' lawyer told the jurors Reyes would testify and the evidence would show she had the methamphetamine and the paraphernalia (the pipes and the scale) but she did not intend to sell the drugs. The State's evidence tracked the highly condensed account we have set out. In addition, the detective testified that based on his training and experience users typically buy a gram of methamphetamine at a time for $20 to $40. The detective also explained drug sellers rather than those buying for personal use typically have digital scales to measure the product. But he agreed that users sometimes have scales.

After the State had presented its evidence and outside the presence of the jurors, the district court spoke directly with Reyes about whether she intended to testify in her own defense and whether she would admit having the methamphetamine and the paraphernalia. The prosecutor and Reyes' lawyer were present. The inquiry unfolded this way:

"THE COURT: We're still on the record, Mr. [defense counsel]. It certainly seems like your client is planning to testify at this point; is that correct?

"[DEFENSE COUNSEL]: Yes.

"THE COURT: Miss Reyes, there's a couple things I want to go over with you. I know Mr. [defense counsel] told you you have the right to testify and that right also includes not having to testify if you don't wish to do so if you don't think it's in your best interests. After consulting with your attorney and thinking it over yourself, which do you feel is in your best interests, to testify on behalf of your own defense?

"THE DEFENDANT: Yes.

"THE COURT: One more thing to go over with you. It certainly seems like the way the case is going is that your defense is going to be that, yes, I possessed methamphetamine; yes, it was mine; belonged to me; and also that I used it. Those things are crimes. It seems like your defense is that these were my drugs, I was using them or planned to use them, but I did not plan to sell them. That's perfectly fine. Your attorney can plan any defense that is appropriate for the facts of the case. I just want to make sure you understand that by making that defense, the fact that you seemed to be saying or arguing that those narcotics were yours and they were possessed by you, you understand you are essentially admitting to the crime by making that defense. Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: You're okay with that?

"THE DEFENDANT: Yes.

"THE COURT: I just wanted to put that on the record. I understand the strategy there. That's perfectly appropriate. I wanted to make sure that you do know you have the right against self-incrimination basically by making this defense. You are waiving that right, at least as it pertains to the methamphetamine and drug paraphernalia?

"THE DEFENDANT: Yes, sir."

When the jurors returned, Reyes testified that she had the methamphetamine and the paraphernalia but did not intend to sell the drugs. She explained she often bought large quantities of methamphetamine because she got a discounted price that way. On cross-examination, Reyes agreed she did not purchase the methamphetamine she had in her possession during the traffic stop. She also confirmed she told the detective she intended to share the methamphetamine with her friends. Apart from testifying, Reyes presented no evidence.

3

The district court instructed the jury on the crime of possession of methamphetamine with the intent to distribute, the lesser included offense of simple possession of methamphetamine, and the crime of possession of drug paraphernalia identified as the pipes and scale. The instructions defined "distribute" as "the actual, constructive, or attempted transfer from one person to another of some item" and "includes, but is not limited to, sale, offer for sale or any act that causes some item to be transferred from one person to another." See K.S.A. 2018 Supp. 21-5701(d) (statutory definition of distribute); PIK Crim. 4th 57.020 (2014 Supp.). The jury convicted Reyes as charged.

At a later hearing, the district court sentenced Reyes to serve 54 months in prison on the felony conviction for possession of methamphetamine with the intent to distribute, a substantial reduction from the standard guidelines punishment, and placed her on postrelease supervision for 36 months. The district court ordered Reyes to concurrently serve a 30-day jail sentence for the misdemeanor paraphernalia conviction. Reyes has appealed.

LEGAL ANALYSIS

For her sole issue on appeal, Reyes contends the district court's discussion with her about her intention to testify and the nature of her defense improperly induced her to take the stand and effectively denied her a fair trial. Although the district court likely erred in exploring those matters with Reyes, the exchange did not adversely influence the trial or the verdicts. Any error was harmless.

We begin with two elemental principles. First, criminal defendants have a personal right to choose to testify or not at trial in their own defense. Although a defendant's lawyer can and should offer advice on the ramifications of testifying, the decision belongs to the client. In short, it is not a matter of strategy entrusted to the lawyer. See

4

*State v. Carter*, 270 Kan. 426, 439, 14 P.3d 1138 (2000); *State v. Hargrove*, 48 Kan. App. 2d 522, 534, 293 P.3d 787 (2013). Second, the decision to plead guilty or not guilty (and, thus, to go to trial) belongs to the defendant. *Carter*, 270 Kan. at 439; *Hargrove*, 48 Kan. App. 2d at 534. As a corollary to the rule, the Kansas Supreme Court has recognized that a lawyer may not present a guilt-based defense without the client's approval, since the decision functionally amounts to offering a guilty plea to some lesser crime to the jury in the hope of securing an acquittal of a more serious charge. *Carter*, 270 Kan. 426 at 440-41.

As a byproduct of those principles, at least some district courts have a practice of making a record with criminal defendants during trial regarding their decision on testifying. Typically, district courts inform the defendants they may elect to testify or not, and the election is theirs personally rather than their lawyers'. Some district courts point out that the jury will be instructed to draw no negative inference if the defendant declines to testify. The discussions culminate with the district courts pointedly asking the defendants to state whether they will testify. See, e.g., *State v. Speer*, No. 115,632, 2018 WL 4039457 at *10 (Kan. App. 2018) (unpublished opinion); *Johnson v. State*, No. 114,735, 2017 WL 3836912, at *8 (Kan. App. 2017) (unpublished opinion); *State v. Taylor*, No. 106,621, 2013 WL 1234189 (Kan. App. 2013) (unpublished opinion). The practice ostensibly informs a defendant about the right to testify, something his or her lawyer should have fully explained anyway. More covertly, however, it also inoculates the record against a later claim from a convicted defendant that he or she did not understand the right and, therefore, acted improperly in choosing either to testify or not. See, e.g., *Drach v. Bruce*, 281 Kan. 1058, 1064-67, 136 P.3d 390 (2006).

Here, the district court established that Reyes, after talking with her lawyer, intended to testify in her own defense. The district court, then, went on to discuss with Reyes the apparent defense strategy of admitting possession of the methamphetamine while contesting the intent to distribute. The district court pointedly informed Reyes that

the strategy entailed the admission of a crime and documented her understanding of its effect.

The Kansas Supreme Court has strongly discouraged district courts from asking criminal defendants about their choice to testify or not. *Taylor v. State*, 252 Kan. 98, 104-06, 843 P.2d 682 (1992) (recognizing and affirming rule of *State v. McKinney*, 221 Kan. 691, 694-95, 561 P.2d 432 [1977], that inquiry is "unnecessary and inappropriate"). The *Taylor* court identified seven reasons weighing against making such an inquiry. 252 Kan. at 106 (quoting *United States v. Martinez*, 883 F.2d 750, 760 [9th Cir. 1989], *vacated on other grounds* 928 F.2d 1470 [9th Cir. 1991]). The court recognized the questioning could impermissibly intrude on defense strategies and might, by emphasizing the right to testify, dissuade defendants from carefully considering their right against self-incrimination. Those are mutually exclusive constitutional rights, since the exercise of one inherently eclipses the other—a criminal defendant cannot both testify in his or her own defense and avoid self-incrimination by remaining silent (or not testifying). *Taylor*, 252 Kan. at 106.

In *State v. Anderson*, 294 Kan. 450, 465-67, 276 P.3d 200 (2012), the court again endorsed *McKinney* and *Taylor* on the way to rejecting the defendant's argument the district court had a duty to advise him about his right to testify and his right against self-incrimination and then to secure a choice from him on the record. The district court acted appropriately in not discussing the matter at all. 294 Kan. at 467.

The rationale of those decisions plainly extends to a district court's inquiry into a defendant's election of guilt-based trial strategy. The questioning intrudes on strategic decisions and implicates constitutional considerations bound up in the protection against self-incrimination and the rights to counsel and to trial. We, therefore, presume the court would similarly discourage the kind of questioning and commentary the district court

6

engaged in with Reyes about the apparent defense strategy of admitting possession of the methamphetamine.

Despite discouraging the judicial questioning of criminal defendants about their decisions on testifying, the Kansas Supreme Court declined to label the practice as invariably error in the quarter century spanning *McKinney* to *Anderson*. We reasonably presume, however, a misleading or especially intrusive district court inquiry would be error.

The Kansas Supreme Court recently recast the identification and evaluation of what had been generically termed "judicial misconduct" by carving out what it now characterizes as "judicial comment error." *State v. Boothby*, 310 Kan. 619, Syl. ¶ 1, 448 P.3d 416 (2019). As described in *Boothby*, those errors entail inappropriate statements a district court makes in front of a jury apart from the recitation of instructions or the substance of a specific legal ruling. 310 Kan. 619, Syl. ¶ 1. The court described a two-step analytical process to address an ostensible judicial comment error: (1) Does the challenged statement fall outside what a district court may properly say, i.e., is it error at all; and (2) if so, has the complaining party's right to a fair trial been substantially prejudiced as a result? 310 Kan. at 627. In fashioning the scope of and analytical method for judicial comment error, the court drew directly from an earlier decision revamping what had been termed prosecutorial misconduct. 310 Kan. at 627 (citing *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 [2016]). If a judicial comment error adversely affects a criminal defendant, then the State, as the benefited party, must show beyond a reasonable doubt that the error did not deprive the defendant of a fair trial, meaning the outcome, considering the entire record, would have been the same had the error not occurred. 310 Kan. at 627. The standard for evaluating prejudice realigns the burden of proof. Under the traditional judicial misconduct standard, the defendant must prove both the error and actual prejudice. But if the defendant has established a judicial comment error, the State must show the lack of prejudice. 310 Kan. at 626-27.

Like this case, *Boothby* was a criminal proceeding, so we are not attempting to fit a doctrine developed in a civil case into a criminal case or visa-versa. Unlike *Boothby*, however, the district court's comments Reyes challenges were not made in front of the jury. As outlined in *Boothby*, a district court's remarks in front of jurors create a sufficient condition to trigger the judicial comment error rule (apart from formal rulings and the reading of instructions). But is an audience of jurors a necessary condition? As stated, the test suggests as much. The district court's discussion with Reyes, however, directly bore on the trial evidence and, thus, what the jurors would hear in deciding the case. That arguably ought to be sufficient, in contrast to, for example, a district court's misguided attempt at humor or otherwise questionable bantering with the lawyers outside the jury's presence. At least one panel of our court has applied the judicial comment error standard to combined remarks of a district court both in front of and outside the presence of the jury. See *State v. Webb*, No. 119,827, 2020 WL 1969438, at \*19-22 (Kan. App. 2020) (unpublished opinion).

Moreover, the practice at issue here is clearly disfavored and applying the standard for judicial comment error theoretically ought to provide a strengthened curb. District courts ought to self-police, lest they inject reversible error—a much more likely prospect under the judicial comment error standard than the judicial misconduct standard. Prosecutors would have a disincentive to invite such an inquiry by the district court and a concomitant positive incentive to object if a district court failed to self-police. (We put to one side the proper judicial course if a *defense* lawyer asks to make a record on his or her discussions with the client about testifying or the use of a guilt-based defense. The issue is not before us and involves additional considerations.)

We presumptively opt to apply the judicial comment error rule here, since it is more favorable to Reyes than the traditional judicial misconduct standard. Having elected that option, we also presumptively conclude without deciding that the exchange between

the district court and Reyes amounted to judicial comment error. First, of course, the district court trod on ground the Kansas Supreme Court has strongly suggested should be left vacant during a criminal trial. Second, the district court didn't just step on the boundary but plunged deep into the territory, especially with its questions and comments to Reyes about her defense.

Having thus presumed error, we contemplate whether we can say beyond a reasonable doubt that the exchange between the district court and Reyes had no material impact on the jury's guilty verdicts. On appeal, Reyes argues the district court's comments may have impermissibly influenced her to testify in her own defense and, thus, to forfeit her constitutional right against self-incrimination as a result. In particular, she points to the district court's use of the phrases "[t]hat's perfectly fine" and "[t]hat's perfectly appropriate" to describe the choice of a guilt-based defense to the possession with intent to distribute charge. Reviewing the entire trial record, we are unpersuaded.

The record indicates Reyes had decided to testify and testify to the guilt-based defense conceding possession before the trial started. In his brief opening statement at beginning of the trial, Reyes' lawyer told the jury, "Miss Reyes will testify," and he proceeded to outline her anticipated testimony, including an admission from the witness stand to possessing the methamphetamine. In turn, nothing in the record suggests the lawyer precipitously delivered the opening statement without consulting Reyes or getting her approval. That would have been extraordinary. So in asking Reyes about her decision to testify after the State rested its case, the district court did no more than confirm what seemed obvious. Reyes expressed no hesitation, equivocation, or uncertainty about her decision to testify. That part of the colloquy supports the idea Reyes understood the choice she was making and had already arrived at a studied election when the district court brought the matter up. The exchange did not depict an ambivalent or uninformed defendant the district court apparently coaxed into testifying.

9

Following the inquiry specifically about testifying and Reyes' clear assertion she intended to testify, the district court then explored the nature of the defense with Reyes. Notwithstanding the argument Reyes fashions on appeal, we fail to see how that discussion could have pushed Reyes into a decision she obviously had already made. Moreover, in context, the district court's remarks about the defense strategy being "fine" and "appropriate" convey a sense that Reyes could take that tack if she wished and not as a prediction of likely success. But even if Reyes misperceived the district court's remarks as a qualitative recommendation of the defense, that misperception simply would have confirmed the decision Reyes had already made to testify. The comments did not lead her where she was otherwise reluctant to go. We entertain no reasoned belief the district court's discussion with Reyes prompted her decision to testify. District courts, of course, typically should not be offering their general views on the relative strengths or weaknesses of the theories of prosecution and defense during a criminal trial. See *State v. Plunkett*, 257 Kan. 135, 141, 891 P.2d 370 (1995); *State v. Larkin*, No. 115,985, 2017 WL 6395789, at *13 (Kan. App. 2017) (unpublished opinion).

The record here illustrates why district courts should avoid that type of colloquy. The endeavor breeds potential error without advancing objectives the Kansas Supreme Court has assessed to be worth the risk.

More broadly in this case, we are persuaded any error was harmless because the verdict would have been the same whether or not Reyes testified. The State's case was, in a word, overwhelming. Reyes indisputably had the methamphetamine, the pipes, and the scale in her possession. The arresting officers established that element. Moreover, Reyes admitted as much to the detective shortly after her arrest. And she told him she had sold drugs from time to time, but she didn't intend to this time. But being of generous spirit, Reyes told the detective she would surely share the methamphetamine with some of her friends. That admission established the element of distribution under Kansas law. Distribution requires only that the defendant transfer illicit drugs to another person, so a

10

gift or simply sharing is enough—the crime does not require a sale or other commercial transaction.

The State's evidence clearly supported each element of possession of methamphetamine with an intent to distribute. Had Reyes not testified, she undoubtedly would have been convicted, assuming the jurors applied the law to the evidence. In her testimony, Reyes denied any intent to sell the methamphetamine—a proposition the jury easily could have found less than credible—but she went on to confirm her willingness to share the drugs with her friends. Reyes thereby admitted the elements of the crime in her own testimony.

In short, Reyes would have been convicted with or without her testimony. We are persuaded the district court did not influence Reyes' decision to testify, undercutting her claim of prejudicial error resulting from the colloquy. But even if Reyes chose to testify specifically because of the district court's comments, any error still would have been harmless in light of the evidence against her. Reyes has not shown the verdict to be infirm, unfair, or otherwise subject to reversal.

Affirmed.

11