NOT DESIGNATED FOR PUBLICATION

No. 123,177

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SEAN CARTER BRADLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; AARON T. ROBERTS, judge. Opinion filed November 5, 2021. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Darrion A. Walker*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

PER CURIAM: This is an appeal by Sean Carter Bradley of his conviction for possession of methamphetamine. Bradley claims that the district court committed judicial misconduct when it inquired into his decision about testifying on his own behalf at trial. Finding no reversible error, we affirm the conviction.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2018, the State charged Bradley with one count of possession of methamphetamine, in violation of K.S.A. 2018 Supp. 21-5706, and one count of

possession of drug paraphernalia, in violation of K.S.A. 2018 Supp. 21-5709(b)(2). Before trial, the district court ordered an evaluation of Bradley's competency to stand trial. A clinical psychotherapist found that Bradley met the criteria for trial competency, although Bradley was previously diagnosed with "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder." The district court found Bradley competent to stand trial. KiAnn Caprice represented Bradley during the criminal trial proceedings.

The jury trial began on July 22, 2019. The following is a summary of the evidence presented at trial. On August 3, 2018, at 12:15 a.m., Officer Carlos Navarro of the Kansas City Kansas Police Department was conducting surveillance at a gas station in Wyandotte County, Kansas. The surveillance occurred due to officers receiving complaints about illicit drug activity at the gas station.

Officer Navarro observed a Chrysler Sebring stop at the gas station, followed shortly by a Nissan sedan that stopped directly behind it. As the Nissan was leaving, an occupant tossed a black item through the window of the Chrysler. Officer Navarro informed other assisting officers of this activity and provided descriptions of both vehicles.

Officer Jacob Dent stopped the Chrysler in a nearby alleyway. As the officer approached the vehicle, he observed the passenger, Bradley, reach down towards his left leg, whereupon he ordered Bradley to stop reaching downward. In that floorboard area, Officer Dent saw a "black glasses case that appeared to possibly contain drug paraphernalia." Officer Dent instructed Bradley and the driver to keep their hands up while he radioed for assistance. A later search of the passenger's side of the vehicle resulted in the seizure of the glasses case which was found where Bradley's left leg would have been—between the console and the passenger's seat. The case contained a "glass meth pipe."

Officer Dent took Bradley into custody and conducted a search of his person. A red plastic container which held methamphetamine was found in Bradley's right front shorts pocket. After being advised of his *Miranda* rights, Bradley informed Officer Dent that he found the red plastic container on the ground in the park near a casino.

Officer Dent spoke with the driver of the Chrysler, Tamara Antill, who informed him that she and Bradley "were planning on using narcotics" after meeting at the casino three days before. Antill told the officer that she parked the vehicle in the alleyway to use the narcotics. According to Officer Dent, Antill did not have drugs or drug paraphernalia on her person and that all items seized from the Chrysler were "touching defendant's leg at one point."

At trial, Bradley testified in his own defense. But before Bradley took the stand and out of the presence of the jury, the following discussion took place involving the district court, Caprice, and Bradley:

"THE COURT: I know your client testifying was up in the air after having more chances to communicate with him. Are there plans to have him testify at this time?

"MS. CAPRICE: He says he wants to testify.

"THE COURT: I know, Mr. Bradley, you know what your rights are but, generally at the same time, you have the right to testify and you have the right to not testify if you think it might incriminate you in any way. So no one can make you testify if you don't want to and no one can stop you from testifying if you feel it's in your best interests. Okay. Have you enough chance to talk about this issue with your attorney?

"THE DEFENDANT: Yes.

"THE COURT: You've had enough time to speak to your attorney?

"THE DEFENDANT: Yes, Sir.

"THE COURT: Do you believe you understand all your rights associated with testifying?

"THE DEFENDANT: Yes.

"THE COURT: Any questions for the Court about this issue?

3

"THE DEFENDANT: No.

"THE COURT: So at this time when we come back from break, you do wish to testify in your own defense?

"THE DEFENDANT: That's correct."

Caprice did not object to the district court's questions or comments. Bradley took the stand and testified that Antill was his friend who picked him up by the casino and drove him to the gas station where Bradley met up with his cousin Chauncey Stamp, the driver of the Nissan. Bradley denied that Stamp threw something from his vehicle to Bradley in the Chrysler.

Bradley testified the black glasses case was possibly open in the middle of the seat, and that it had something red sticking out of it but he did not know its contents. He denied that the red plastic container with methamphetamine was in his right front shorts pocket. Bradley also denied knowing about the contents of the black glasses case or that Antill was driving around with drugs in her car.

The jury found Bradley guilty of possession of methamphetamine but was deadlocked and unable to reach a verdict on the charge of possessing drug paraphernalia. Before sentencing, Bradley filed a motion for durational and dispositional departure. Given his criminal history score of A, Bradley sought a reduction of an anticipated prison sentence from 37 to 40 months' incarceration. At sentencing on July 22, 2020, the district court granted Bradley's motion for a durational departure and sentenced him to a controlling term of 23 months' incarceration with 12 months' postrelease supervision. The district court waived all fees involved in the case.

Bradley timely appeals.

4

Bradley raises one issue on appeal: "Reversible error was committed when the district court, sua sponte, directly addressed Sean Bradley at trial and advised him of his rights related to testifying at trial." In response, the State contends: "The district court did not commit judicial misconduct by addressing Sean Bradley about his right to testify when it was clear that Bradley already made an informed decision to testify."

As a preliminary matter, we note our standard of review. Appellate courts have unlimited review over judicial misconduct claims and review them in light of the facts and circumstances surrounding the particular allegation. *State v. Boothby*, 310 Kan. 619, 624-25, 448 P.3d 416 (2019).

Additionally, we must also determine the type of judicial error that is alleged in this appeal. Kansas courts traditionally used the term "judicial misconduct" to generally describe any type of judicial error involving the right to a fair trial which did not concern a jury instruction or legal ruling. But more recently, our Supreme Court has distinguished "judicial comment error" from the generic judicial misconduct designation. Judicial comment error consists of "erroneous judicial comments *made in front of a jury* (that are not jury instructions or legal rulings)." (Emphasis added.) 310 Kan. at 626. The distinction in the designations is important.

The party bearing the burden of proving prejudice depends on whether the district court error is classified as "judicial misconduct" or "judicial comment error." 310 Kan. at 625-26. If the party alleges judicial misconduct, then the party raising the issue has the burden of establishing that the misconduct occurred and that it prejudiced the party's substantial rights. *State v. Miller*, 308 Kan. 1119, 1154, 427 P.3d 907 (2018). For judicial comment error, the party benefitting from the error must show a lack of prejudice. *Boothby*, 310 Kan. at 625-26.

Here, Bradley does not favor us with identifying whether the district court's comments were judicial misconduct or judicial comment error. For its part, while disputing that any error occurred, the State analyzes the issue in the context of judicial misconduct. Given that judicial comment error entails inappropriate statements in front of a jury and the district court made its inquiry of Bradley *outside* the presence of the jury, we are persuaded that Bradley has raised an allegation of judicial misconduct. See 310 Kan. 619, Syl. ¶ 1. However, in an abundance of caution given the constitutional rights at stake in this appeal, we will apply the rule that a court will declare a constitutional error harmless only where the party benefiting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 [1967]).

As a final preliminary matter, Bradley did not contemporaneously object to the district court's colloquy. As a rule, an appellant may not raise issues for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). Still, Bradley claims an exception to this rule and insists our court should consider the issue on the merits because it is necessary to protect his "constitutional rights to a fair trial and to avoid being a witness against [himself]."

Our court may "review an allegation of judicial misconduct on appeal despite the absence of a contemporaneous objection where the defendant claims his or her right to a fair trial was violated." *State v. Tyler*, 286 Kan. 1087, 1090, 191 P.3d 306 (2008). Although Bradley's argument is made in a rather conclusory fashion, we will overlook any procedural bar and consider the merits of the issue. See *Miller*, 308 Kan. at 1154.

The United States Supreme Court has determined that a criminal defendant has a constitutional right to testify on his or her own behalf under the United States Constitution's Fourteenth Amendment Due Process Clause, the Sixth Amendment Compulsory Process Clause, and the Fifth Amendment's guarantee against compelled testimony. *State v. Anderson*, 294 Kan. 450, 465, 276 P.3d 200 (2012). Relevant to this appeal, our Supreme Court has reaffirmed the precedent established in *Taylor v. State*, 252 Kan. 98, 106, 843 P.2d 682 (1992), which provides:

> "'A trial court has no duty sua sponte to address a silent defendant and inquire whether he or she knowingly and intelligently waives the right to testify. An express waiver, on the record, is not necessary because a defendant's conduct provides a sufficient basis from which to infer that the right to testify is waived. There is a danger that by asking a defendant if he or she is aware of his right to testify, a trial court may inadvertently influence a defendant to waive the equally fundamental right against self-incrimination.' *Taylor*, 252 Kan. 98, Syl. ¶ 5." *State v. Breeden*, 297 Kan. 567, 586, 304 P.3d 660 (2013).

In *Anderson*, our Supreme Court summarized the seven reasons identified in *Taylor* for concluding that a district court has no duty sua sponte to inquire of the defendant whether he or she waives the right to testify:

> "(1) the right to testify must be asserted to be recognized; (2) the decision to testify must be made at trial, and the failure to testify cannot be raised as an afterthought; (3) the court could influence the defendant to waive his or her right not to testify by advising him or her of the right to testify; (4) the trial court may improperly intrude on the attorney-client relationship; (5) the judge's admonition may introduce trial error; (6) it is difficult to determine the appropriate time for the admonition; and (7) the judge should not interfere with trial strategy. 252 Kan. at 106 (quoting *United States v. Martinez*, 883 F.2d 750, 760 [9th Cir. 1989], *vacated on other grounds* 928 F.2d 1470 [9th Cir.], *cert. denied* 501 U.S. 1249 [1991])." *Anderson*, 294 Kan. at 466-67.

On appeal, Bradley notes his diagnosis of mental illness and Caprice's opposition to his testifying at the preliminary hearing. Bradley concludes: "The danger recognized by the Kansas Supreme Court in *Taylor* is that a defendant may be inadvertently influenced by the court's comments to waive an equally fundamental right against self-incrimination and testify at trial. That is exactly what occurred in this case." Moreover, in Bradley's view, his trial testimony "flying directly in the face of multiple police officer witnesses for the State at trial, could certainly have been prejudicial to [his] case."

The State counters that

"the district court did not encounter a silent defendant in this case. The record shows that Bradley had decided to testify, and he expressed no hesitation, equivocation, or uncertainty about his decision to testify. . . .The court's comments were perfectly impartial, neither expostulating on the benefits nor the drawbacks of testifying. The district court's colloquy here was intended to ensure that Bradley's rights were protected."

Applying our Supreme Court's precedent to the facts of this particular case, it is apparent the district court erred in its colloquy with Bradley. Despite providing a correct admonition to Bradley that he had a constitutional right to testify or not to testify, the district court disregarded our Supreme Court's directive that, due to the seven reasons identified in *Taylor*, district courts should avoid discussing these rights with a criminal defendant at trial.

Was Bradley prejudiced by the colloquy with the district court? Prejudice occurs when the misconduct makes the judge look "less than impartial" or when it "pollutes the entire trial." *State v. Walker*, 308 Kan. 409, 419, 421 P.3d 700 (2018). "A judge's misconduct pollutes the entire trial when the misconduct consists of more than an isolated comment or action and the judge fails to purge the taint of the misconduct." 308 Kan. at 420.

We are convinced that Bradley was not prejudiced by the colloquy with the district court and, employing the constitutional error standard, that the error was harmless. First, the district court's brief remarks correctly and even-handedly informed Bradley of his constitutional rights. There were no misstatements, and the comments were explanatory and not coercive.

Second, prior to the colloquy, Caprice informed the district court that Bradley wanted to testify on his own behalf. Since Bradley did, in fact, testify at trial, it is obvious that nothing the district court said dissuaded him from what he originally had decided to do.

Third, Bradley's decision to testify at trial was consonant with his earlier decision to testify at the preliminary hearing. In fact, Bradley insisted on testifying at the preliminary hearing, despite Caprice's adamant advice against testifying. Upon our review of Bradley's testimony at the preliminary hearing and trial, it is apparent that Bradley strenuously disagreed with the law enforcement officers' account of the incident and his personal possession of methamphetamine, and he wanted to personally challenge in court the incriminating testimony presented by the State.

Finally, although Bradley states on appeal that his trial testimony was detrimental to his defense—because he alleged the law enforcement officers' testimony was either incorrect or a lie—we fail to see how Bradley's testimony about police misconduct and his protestations of innocence were damaging to his defense. Without Bradley's contrary testimony, the State's case would have been uncontroverted. And upon our review, we find no damaging admissions by Bradley while on the witness stand. Regardless, the decision to testify was Bradley's to make, and for purposes of our analysis, the important consideration is that the district court's comments did not affect Bradley's knowing and voluntary decision. Whether a defendant's testimony would help or hinder the defense is

9

not for our court to determine and is not a part of the test we apply on appeal. See *Walker*, 308 Kan. at 419.

Considering the particular facts and circumstances surrounding Bradley's claim of judicial misconduct, we hold there is no reasonable possibility that the district court's error affected the jury's verdict.

Affirmed.