NOT DESIGNATED FOR PUBLICATION

No. 126,818

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MANUEL MEDINA-CASTRO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; RENE YOUNG , judge. Oral argument held April 8, 2025. Opinion filed January 9, 2026. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before HURST P.J., MALONE and COBLE, JJ.

PER CURIAM:  Manuel Medina-Castro shot and killed M.T.—a neighbor and someone Medina-Castro called a friend. The shooting is unchallenged, but the circumstances of the shooting were disputed at trial. The State sought a first-degree murder conviction, and Medina-Castro claimed he shot M.T. in self-defense. The jury convicted Medina-Castro of intentional second-degree murder, and he appeals.

1

On appeal, Medina-Castro claims that several trial errors, either individually or cumulatively, deprived him of a fair trial and this court should reverse his conviction. Finding none of Medina-Castro's claims resulted in error, his conviction is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Medina-Castro testified in his own defense about the September 2021 events where he shot and killed M.T. According to Medina-Castro, he and M.T. lived in the same apartment complex and were friends. On the day of the incident, Medina-Castro testified that M.T. asked him to get a "T-shirt or a ball" of methamphetamine, which Medina-Castro did. According to Medina-Castro, M.T. was aggravated and complained that the methamphetamine felt lighter than it should have—meaning that Medina-Castro had given him fewer drugs than M.T. requested. The two then began looking for a scale to weigh the drugs but failed in locating one.

According to Medina-Castro, M.T. then asked him for a ride to a friend's house, which Medina-Castro agreed to. Medina-Castro did not know where they were going, so M.T. gave him directions along the way. The pair eventually turned onto a road with a dead-end sign. While in the car on the dead-end road, Medina-Castro shot M.T. several times. Medina-Castro does not dispute shooting and killing M.T., but what exactly transpired in the car—and Medina-Castro's mental state when he shot M.T.—were the primary issues at trial. The State alleged Medina-Castro committed first-degree premeditated murder, which he disputed.

During his testimony, Medina-Castro claimed that when he and M.T. turned onto the dead-end road, he said, "Hey, this is a dead end," to which M.T. responded, "This is where you get off." Medina-Castro then testified that M.T. pointed a gun at him and that he feared for his life:

2

"I look over, and then I see a pistol in his hand.

. . . .

"In that moment, I was—I was in fear of my life. So then knowing how he gets when he gets angry and stuff, I reach for my right hand for the door handle, and then with my left hand I had my .40 on the side of the seat, so I grabbed my .40 with my left hand so when I looked like I was going to reach for the door handle to open the door, I pulled it up, leaned over, closed my eyes, and squeezed the trigger.

. . . .

"Then I opened my eyes, and I look over, and I see him. He's leaned over. And at that point, all of a sudden my ears are ringing, and I call his name and he doesn't reply. So I put the car in park, opened my driver door, go around, and I call his name again: [M.T.], [M.T.]. And, again, no response. And at that moment I noticed he was dead."

Medina-Castro said he shot M.T. between two and four times in self-defense. He denied shooting in rapid succession and testified he pulled the trigger multiple times.

On direct examination, Medina-Castro explained that he interpreted M.T.'s comments as a threat, and when he saw that M.T. had a gun pointed at him he responded by firing his own gun:

"Q. When you pulled off the road and commented that it was a dead end, did you take the comment made by [M.T.] as a threat?

"A. Yes.

"Q. And did you look over? Were you looking at him when he made this threat? Or how did that come about?

"A. When he said that, I looked over. Like, I glanced over. And then that's when—like I said, I seen, he was leaning kind of like this, looking at me, with the pistol in his hand.

"Q. And that's when you discharged your firearm?

"A. That's when—that's when I proceeded to make it look like I was going to get out of the car, and reached for my .40, and then just leaned into the corner—the corner most part of the car I can get, with my eyes closed, and just pulled the trigger."

Counsel then asked, "Other than seeing a firearm pointed at you, did you have any reason whatsoever to take [M.T.]'s life?" Medina-Castro responded, "No. I considered him a friend." On cross-examination, Medina-Castro agreed he blindly shot at M.T.

After shooting M.T., Medina-Castro testified he opened the passenger door and laid M.T. in the ditch. He also testified that while he drove away, he threw things out of the window, including M.T.'s cell phone and charger. Medina-Castro said he found M.T.'s gun on the floorboard, which turned out to be a BB gun, and then threw it out the window. Police did not recover a BB gun during their investigation.

Police found M.T.'s body several days later. They also recovered his cell phone. M.T. had wounds in his cheek and skull consistent with gunshot wounds. During their investigation, Police recovered four shell casings and testified the passenger door of the car had one bullet hole.

Medina-Castro's mother, Alicia, testified about his actions at her house on the morning after the murder. Alicia testified Medina-Castro told her he "crushed [her] car" when he hit an animal. When she went to look at the car, Alicia testified she saw a scratch, a hanging mirror, and a broken passenger window—not shattered but with a hole. She confirmed she also saw blood on the passenger window. Alicia further testified she was concerned about the hole in the window because she thought it could be a bullet hole. She later found a gun in her house that did not belong to her.

One of M.T.'s neighbors testified at trial that he saw M.T. the day before the murder and had plans to meet up with him the next day. The neighbor testified he never saw M.T. with a weapon and that T.R., an acquaintance and neighbor of the men, said that Medina-Castro had shot M.T. in the head. The neighbor further testified that T.R. said Medina-Castro had indicated Medina-Castro was missing methamphetamine, and the implication was that M.T. had his missing methamphetamine. Finally, the neighbor

4

testified that T.R. said Medina-Castro told her M.T. died because "he took somebody else's belongings," meaning Medina-Castro's methamphetamine.

Relevant to this appeal, the prosecutor made the following comments during voir dire:

"[A]s the Court has already said, and you'll be told again, obviously in America everyone is innocent until proven guilty beyond a reasonable doubt. That's the standard of proof. So, as Mr. Medina-Castro sits here today in front of you, everyone agrees that right now he's presumed innocent; correct. Anyone not feel that way?

"Does anyone feel that if he's sitting here in the courtroom this morning, man, he must have done something wrong and therefore he's probably guilty? Does anyone feel that way? No? All right.

"So, everyone is comfortable then holding me to my burden of proving this case beyond a reasonable doubt?

"Assuming that the State can do that for you, again the jury instruction is going to say that you are to find him guilty of the charge that the State has proved beyond a reasonable doubt. Anyone have a problem doing that? No response."

During trial, the State sought to introduce evidence of Medina-Castro's drug use, to which he objected. The State argued Medina-Castro had opened the door to his drug use and that it was "part and parcel of the crime" charged. The State alternatively argued the evidence was admissible under K.S.A. 2024 Supp. 60-455(b) as evidence of motive. The district court agreed with the State that the evidence was "part and parcel of the entire act" but still conducted an analysis under K.S.A. 60-455, ultimately allowing admission of the evidence:

"THE COURT: [T]he evidence that the State seeks to admit, is a statement from the defendant that was allegedly made following the shooting. And the evidence directly bears on the defendant's motive for allegedly committing this offense. So, the Court does agree that it's part and parcel of the entire act. I don't know that really a 60-455 motion was required by the State, but I will go ahead and make the 60-455 analysis.

5

"And, so, the State is seeking to admit statements that [T.R] made to [G.D.] which were repeating back statements allegedly made by the defendant as to the motive, the alleged motive for committing this act, and the defense admission that he had committed the act of shooting [M.T.].

"And the Court will find that the evidence that the State seeks to admit is highly relevant and material to the defendant's motive for committing the alleged act. And, secondly, that the material fact is disputed. Motive is disputed and premeditation is disputed by the defendant as he has entered a plea of not guilty. And the Court will find that the probative value of this evidence does outweigh the prejudice, the potential for undue prejudice.

"So, I will permit the State to present this testimony. And I am going to require that the State first call [T.R.] as its first witness to present that evidence.

. . . .

"[Medina-Castro's Counsel]: Just a point of clarification. The Court is admitting the statement as under 60-455?

"THE COURT: Yeah, I went ahead and made that analysis. I don't know that I was even required to do that, since I think it is part and parcel. I agree with the State, it is part and parcel for the motive for the commission of the act. It's not the State is seeking to admit evidence from two years ago of a bad, you know, a bad drug deal, but the acts just immediately surrounding it."

Neither party sought—and the district court did not sua sponte provide—a K.S.A. 60-455 limiting jury instruction.

The district court instructed the jury on first-degree premeditated murder and the lesser included offenses of intentional second-degree murder and imperfect self-defense voluntary manslaughter. The district court also instructed the jury on self-defense. Relevant to this appeal, the district court gave the following instructions to the jury:

"Instruction Number 3. ) If you do not agree that the defendant is guilty of Murder in the First Degree, you should then consider the lesser included offense of Murder in the Second Degree.

6

"To establish this charge, each of the following claims must be proved: 1.) The defendant intentionally killed [M.T.]; 2.) This act occurred on or between the 16th day of September, 2021, and the 17th day of September, 2021, in Saline County, Kansas.

. . . .

"Instruction Number 6: A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State."

The jury ultimately returned a guilty verdict on the lesser included offense of intentional second-degree murder.

Medina-Castro now appeals.

DISCUSSION

Medina-Castro appeals his conviction, arguing he was deprived of a fair trial from the following errors: (1) the district court erred in instructing the jury on intentional second-degree murder; (2) the district court erred in failing to instruct the jury on the lesser included offenses of reckless second-degree murder, reckless involuntary manslaughter, and imperfect self-defense involuntary manslaughter; (3) the district court erred in failing to give a limiting instruction regarding prior bad acts evidence; (4) prosecutorial error during voir dire; and (5) cumulative error.

I. THE INTENTIONAL SECOND-DEGREE MURDER JURY INSTRUCTION

Medina-Castro claims the jury instruction for intentional second-degree murder was legally erroneous because it did not require the jury to find he acted *intentionally* to kill M.T. The district court must provide jury instructions that are both legally and factually appropriate, and this court exercises unlimited review over whether the provided instruction meets those criteria. *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025); see also *State v. Peters*, 319 Kan. 492, 517, 555 P.3d 1134 (2024) ("In considering the

7

merits, we employ unlimited review of the entire record to consider whether an . . . instruction would have been legally and factually appropriate.").

When analyzing trial errors related to jury instructions, appellate courts employ a three-step process. This court must first determine whether the issue is properly preserved—which impacts step three—it then must determine whether an error occurred, and finally in the third step whether the error requires reversal. *Hollins*, 320 Kan. at 242 (citing *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 [2021]). If the court determines at step one that the issue was not preserved for appeal (not properly objected to at trial) that impacts the reversal standard at step three. When an alleged jury instruction error is unpreserved, like here, the appellate court reviews it under the clear error standard. K.S.A. 22-3414(3); *State v. Dobbs*, 297 Kan. 1225, 1237, 308 P.3d 1258 (2013). Clear error is a high standard that permits reversal only when the appellate court is "firmly convinced the jury would have reached a different verdict absent the error." 297 Kan. at 1237.

In addressing these steps, Medina-Castro concedes he failed to object to the intentional second-degree murder jury instruction at trial, making this court's review under the clear error standard. Having established the standard, the court must then determine whether an error occurred. The instruction for second-degree murder provided at trial stated:

> "To establish this charge, each of the following claims must be proved: 1.) The defendant intentionally killed [M.T.]; 2.) This act occurred on or between the 16th day of September, 2021, and the 17th day of September, 2021, in Saline County, Kansas.
> . . . .
> "Instruction Number 6: A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State."

Medina-Castro contends that the instruction merely requires the jury to find that he intentionally shot M.T., not that he intended to kill M.T. Therefore, according to Medina-Castro the instruction is legally erroneous. Medina-Castro's argument is not novel, as he acknowledges the Kansas Supreme Court has addressed this same argument related to the jury instruction for intentional first-degree murder. See *State v. Seba*, 305 Kan. 185, 207, 380 P.3d 209 (2016). However, Medina-Castro attacks the court's reasoning in that case seeking this court's reconsideration. In *Seba*, the challenged jury instruction provided:

> "'To establish this charge, each of the following claims must be proved:
>> 1. The Defendant intentionally killed Alexandria Duran.
>> 2. The killing was done with premeditation.
>> 3. This act occurred on or about the 24th day of July, 2013, in Pratt County, Kansas.
>
>> . . . .
>
>> "'A defendant acts intentionally when it is the Defendant's desire or conscious objective to do the act complained about by the State.'" 305 Kan. at 206-07.

Seba argued the instruction was erroneous because it "advised the jury that Seba was guilty of first-degree murder if he merely intended to perform an act that resulted in death." 305 Kan. at 206. In rejecting Seba's argument, the court found the act of "killing" requires death as a result, meaning a person could not intend to kill without intending to cause death. The court concluded there was no error and that the instruction properly informed the jury of the intent required. 305 Kan. at 207.

Intentional second-degree murder requires both a killing of a person and the intent to kill such person. The only difference between the charge here (intentional second-degree murder) and the charge in *Seba* (premeditated first-degree murder) is the additional element of premeditation. *State v. Douglas*, 313 Kan. 704, 710, 490 P.3d 34 (2021). Thus, it is unsurprising that the premeditated first-degree murder jury instruction found legally appropriate in *Seba* is nearly identical to the intentional second-degree

9

murder instruction used in this case. The only difference is the element of premeditation included in the instruction in *Seba*, which is absent from the instruction given here. Therefore, according to the court's decision in *Seba*, the instruction is legally appropriate.

While recognizing the direct applicability of the *Seba* decision and analysis, Medina-Castro argues *Seba* must be disavowed. However, this court is bound by Kansas Supreme Court precedent absent an indication a change is on the horizon. *State v. Scheetz*, 318 Kan. 48, 60, 541 P.3d 79 (2024) (quoting *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 168, 298 P.3d 1120 [2013]). Seeing no evidence the Kansas Supreme Court is on the precipice of reversing its decision in *Seba*, this court follows its holding and finds no legal error in the intentional second-degree murder jury instruction provided.

Medina-Castro does not argue the instruction was factually inappropriate, and this court finds no such error. Accordingly, the district court did not err in giving the intentional second-degree murder jury instruction.

## II. THE FAILURE TO INSTRUCT ON LESSER INCLUDED OFFENSES

Medina-Castro next argues the district court erred in failing to provide instructions on the lesser included offenses of reckless second-degree murder, reckless involuntary manslaughter, and imperfect self-defense involuntary manslaughter. Generally, the district court must provide all jury instructions that are legally and factually appropriate. *State v. Gentry*, 310 Kan. 715, 720-21, 449 P.3d 429 (2019). A jury instruction for a lesser included crime is legally appropriate. 310 Kan. at 721 (quoting *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 [2012]). A lesser included offense is a "lesser degree of the same crime." K.S.A. 21-5109(b)(1).

This court employs the same multi-step process discussed above when reviewing a jury instruction error related to a court's failure to include an appropriate instruction as when it determines whether a given instruction was an error. Appellate courts generally decline to consider an issue raised for the first time on appeal. *State v. Shields*, 315 Kan. 814, 820, 511 P.3d 931 (2022). However, a party may challenge a jury instruction for the first time on appeal, but such error only warrants reversal if it was clearly erroneous. *Shields*, 315 Kan. at 820.

Medina-Castro concedes he did not object to the omission of the instructions at trial. Thus, this court must determine whether the failure to give the lesser included offense instructions was clearly erroneous. K.S.A. 22-3414(3); *State v. Turner*, 318 Kan. 162, 166-67, 542 P.3d 304 (2024). To prevail, Medina-Castro bears the burden to demonstrate the instructions were legally and factually appropriate and also firmly convince this court that the jury would have entered a different verdict without the error. *State v. Sinnard*, 318 Kan. 261, 291, 543 P.3d 525 (2024); *Turner*, 318 Kan. at 166-67.

This court exercises unlimited review over whether the omission of a jury instruction was an error—that is, whether it was legally and factually appropriate. *Hollins*, 320 Kan. at 242. The parties do not dispute that reckless second-degree murder, reckless involuntary manslaughter, and imperfect self-defense involuntary manslaughter are lesser included offenses of intentional second-degree murder and were therefore legally appropriate. This court agrees. See *State v. James*, 309 Kan. 1280, 1298, 443 P.3d 1063 (2019) (quoting *State v. Carter*, 305 Kan. 139, 161, 380 P.2d 189 [2016]) (there are five degrees of homicide, including capital murder, first-degree murder, second-degree murder, voluntary manslaughter, and involuntary manslaughter); *Gentry*, 310 Kan. at 721 ("[S]econd-degree murder, voluntary manslaughter, and involuntary manslaughter are lesser included offenses of first-degree premeditated murder."). Having found the omitted instructions are legally appropriate, the court must consider whether they are factually appropriate.

11

A jury instruction is factually appropriate if, viewing the evidence in the most favorable light to the defendant, there was sufficient evidence that would have supported the instruction. To determine whether a lesser included offense instruction is factually appropriate, the court analyzes whether it would uphold a conviction for the lesser offense following a challenge to the sufficiency of the evidence. *State v. Martinez*, 317 Kan. 151, 171, 527 P.3d 531 (2023). This is not an onerous standard, the "court must consider whether there is some evidence, viewed in a light most favorable to the defendant, emanating from whatever source and proffered by whichever party, that would reasonably justify the defendant's conviction for that lesser included crime." *State v. Lowe*, 317 Kan. 713, Syl. ¶ 1, 718, 538 P.3d 1094 (2023). In doing so, this court does not reweigh the evidence or reassess witness credibility. *State v. Gomez*, 320 Kan. 3, 11, 561 P.3d 908 (2025).

*Imperfect Self-Defense Involuntary Manslaughter Was Not Factually Appropriate.*

Imperfect self-defense involuntary manslaughter is the killing of a person committed "during the commission of a lawful act in an unlawful manner." K.S.A. 21-5405(a)(4). This instruction applies when a person maintains they killed someone in self-defense but used excessive force. *State v. Dotson*, 319 Kan. 32, 52, 551 P.3d 1272 (2024). Often this defense is used when the defendant is mistaken about the potential threat or need for deadly force in defense of themselves.

Medina-Castro claims an instruction on imperfect self-defense involuntary manslaughter was factually appropriate because Medina-Castro acted in self-defense but M.T. only had a BB gun—not a real gun. The State argues that Medina-Castro's testimony that he reasonably but mistakenly believed that M.T. had a real gun factually supported his use of deadly force meaning the imperfect self-defense instruction was factually inappropriate. Moreover, the police never recovered a gun—BB or otherwise—from the scene despite police finding the other evidence that Medina-Castro said he

disposed of like M.T.'s cell phone. There was no evidence or testimony other than from Medina-Castro that M.T. had a BB gun that day. Based on these facts, an instruction on imperfect self-defense involuntary manslaughter was likely not factually appropriate.

However, even assuming the instruction was factually appropriate—the failure to give it was not clearly erroneous. When the defendant fails to request a jury instruction, as occurred here, any resulting error is only reversible when "the instruction or the failure to give an instruction is clearly erroneous." K.S.A. 22-3414(3). Clear error occurs only when this court is firmly convinced the jury would have reached a different verdict had the omitted instruction been included. *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018).

While a reasonable jury could have reached a different verdict—as almost anything is possible—it is improbable. Given the evidence, this court is not firmly convinced it would have. There was more evidence supporting a non-self-defense theory of the crime: testimony indicated there were bad feelings between Medina-Castro and M.T. related to a drug deal gone bad; Medina-Castro shot M.T. at very close range and attempted to cover up the incident (rather than seek help); testimony that Medina-Castro told [T.R.] that M.T. was dead for taking someone else's things (not self-defense); no gun, whether BB or not, was found at the scene; and there was no other evidence that M.T. had a BB gun with him the day of the incident. Moreover, the jury rejected Medina-Castro's self-defense theory at trial. If the jury believed Medina-Castro acted in self-defense it had an option for convicting him of such and there is no indication that his testimony that M.T. had a BB gun—rather than a real gun—contributed to the rejection of the self-defense theory. Medina-Castro has failed to firmly convince this court that the jury would have reached a different result had the district court included the imperfect self-defense involuntary manslaughter jury instruction.

*Reckless Second-Degree Murder & Reckless Involuntary Manslaughter*

Medina-Castro also alleges the district court erred by not including the lesser included offense instructions for reckless second-degree murder and reckless involuntary manslaughter, which both require evidence of recklessness. Reckless second-degree murder is the killing of a person committed "unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." K.S.A. 21-5403(a)(2). Reckless involuntary manslaughter "is the killing of a human being committed . . . [r]ecklessly." K.S.A. 21-5405(a)(1). Under Kansas law, a "person acts 'recklessly' or is 'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 21-5202(j).

The State argues there was no error from failing to give these two instructions because the evidence was overwhelming that Medina-Castro intended to kill M.T., and thus Medina-Castro did not act recklessly. The State argues that Medina-Castro never testified he acted recklessly but rather that he intended to shoot M.T.—for whatever reason. However, intent to shoot M.T. does not automatically mean Medina-Castro intended to kill M.T. That is, Medina-Castro could have intended to shoot at M.T. while acting recklessly—otherwise Kansas would not have lesser included offenses at all. See *James*, 309 Kan. at 1299 (quoting *State v. Deal*, 293 Kan. 872, 884, 269 P.3d 1282 [2012]) ("[E]ven an intentional blow can result in an unintentional but reckless killing."). In *James*, the Kansas Supreme Court made clear that while a person may have "intended the underlying act of shooting," such intent is "inadequate to rule out an instruction on reckless second-degree murder." 309 Kan. at 1299.

Looking at the evidence most favorably to Medina-Castro, it was likely factually appropriate to include a lesser included offense instruction on both reckless second-degree murder and reckless involuntary manslaughter. Medina-Castro testified M.T. directed him to a dead-end road and threatened him by saying, "This is where you get off," while holding what Medina-Castro thought was a pistol. As a result, Medina-Castro testified he shot at M.T. with his eyes closed during the entire shooting. This could indicate he was not intentionally aiming for any specific part of M.T. The act of shooting in the direction of someone in self-defense does not necessarily contradict a theory of reckless conduct. "An instruction on a lesser included offense is not foreclosed because it is inconsistent with either the evidence presented by the defense or the theory advanced by the defense. A defendant is entitled to inconsistent defenses. [Citations omitted.]" *State v. Williams*, 303 Kan. 585, 599, 363 P.3d 1101 (2016). Medina-Castro could have both intentionally shot the gun in self-defense with eyes closed while recklessly killing M.T. Thus, there could have been sufficient evidence to uphold both a reckless second-degree murder or reckless involuntary manslaughter conviction against Medina-Castro because his actions in shooting M.T. at close range between two to four times with eyes closed indicates at the very minimum reckless behavior suggesting Medina-Castro consciously disregarded a substantial and unjustifiable risk, with such disregard reflecting a gross deviation from the standard of care that a reasonable person would exercise.

Having determined instructions on reckless second-degree murder and reckless involuntary manslaughter were legally and factually appropriate, the next question is whether the error in failing to give the instructions constitutes reversible error. As explained before, because Medina-Castro did not request the instructions at trial, such error is only reversible if this court is firmly convinced that if the instructions were included the jury would have entered a different verdict. The clear error standard sets a high burden for a defendant. See *State v. Pulliam*, 308 Kan. 1354, 1370, 570 P.3d 39 (2018) (explaining the clear error set a high burden for Pulliam when the jury heard evidence of self-defense but convicted Pulliam of second-degree murder).

The State contended Medina-Castro acted with premeditation and intentionally killed M.T. Medina-Castro testified he shot M.T. in self-defense, and the jury was instructed on self-defense and given the option of the lesser included offense of imperfect self-defense voluntary manslaughter. The jury rejected both theories, convicting him of intentional second-degree murder. This indicates the jury did not believe Medina-Castro acted with premeditation, but neither did it believe he acted in self-defense. So, the question remains whether they would have believed he acted recklessly rather than intentionally if given the option.

The evidence of intentional rather than reckless conduct is extensive. While Medina-Castro claimed he shot with his eyes closed—he did not testify that he shot away from M.T. or in a manner that would avoid hitting M.T. For example, a panel of this court found clear error when a district court failed to give an instruction for reckless aggravated battery when the defendant testified that "he did not intend to shoot anyone and that he shot his pistol in the air merely to frighten those advancing on his pickup." *State v. Ochoa*, 20 Kan. App. 2d 1014, 1020-21, 895 P.2d 198 (1995). No such evidence exists here. Medina-Castro testified he intentionally shot his gun as many as four times to defend himself against M.T. while sitting in a small, confined area. He denied shooting in rapid succession and testified he pulled the trigger multiple times. While he claims to have closed his eyes when he shot—the autopsy showed that the victim was hit in the head with potentially two bullets. Therefore, Medina-Castro—even if the jury believed his eyes were closed—likely hit the victim in the head with two shots. While there was not exact testimony of the number of shots fired, a crime scene and evidence technician and investigating special agent testified police found four shell casings as well as one bullet fragment in the passenger door. Even looking at the facts in the most favorable light to Medina-Castro—he hit the victim in the head with at least one shot and possibly two out of a total of no more than four shots fired with his eyes closed. Medina-Castro introduced no evidence or argument in closing that these facts demonstrated reckless conduct.

16

There was also evidence that Medina-Castro attempted to cover up M.T.'s death by hiding M.T.'s body in a ditch and throwing his belongings out the window. Additionally, there was evidence that Medina-Castro hid the gun used in the shooting. Finally, as explained above, a witness testified that Medina-Castro told another person that M.T. was dead for taking someone's belongings. None of this supported a theory of reckless conduct.

While a reasonable jury *could* have reached a different verdict, the evidence undercuts a finding that the jury would have reached a different verdict had it been instructed on reckless second-degree murder or reckless involuntary manslaughter. The only evidence of reckless conduct was Medina-Castro's testimony that he "leaned over, closed my eyes, and squeezed the trigger" and that he moved to the corner of the car "with my eyes closed, and just pulled the trigger." However, that testimony—even if believed—coupled with the other evidence does not firmly convince this court that the inclusion of the erroneously omitted instructions would have affected the outcome. The jury received instructions about what constitutes intentional conduct and that the State must prove Medina-Castro's guilt beyond a reasonable doubt—that "[t]he defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty." Therefore, because the jury had the option of convicting Medina-Castro of imperfect self-defense voluntary manslaughter, its decision to convict on intentional second-degree murder demonstrates it was unpersuaded by Medina-Castro's defense.

Medina-Castro has failed to show the district court committed clear error in failing to instruct the jury on the lesser included offenses of reckless second-degree murder or reckless involuntary manslaughter.

III. THE FAILURE TO GIVE A 60-455(b) LIMITING INSTRUCTION

In another claim of error related to an omitted jury instruction, Medina-Castro claims the district court erred by not giving the jury a limiting instruction related to the prior bad acts evidence that he used and possessed methamphetamine. Kansas limits the admission of "prior bad acts evidence." See *State v. Evans*, 313 Kan. 972, 987, 492 P.3d 418 (2021) (analyzing whether the court erred in admitting prior bad acts evidence). "[E]vidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." K.S.A. 2024 Supp. 60-455(a). But this evidence can be admitted when it is "relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 2024 Supp. 60-455(b). However, to Medina-Castro's point, if a court admits prior bad acts evidence in a jury trial, "a limiting instruction must be provided to inform the jury of the specific purpose for which the evidence was admitted." 313 Kan. at 987.

Once again, Medina-Castro raises an error related to the failure to give a jury instruction for the first time on appeal. Therefore, just as with the other alleged jury instruction errors discussed herein, the court will consider whether the instruction would have been legally and factually appropriate and, if those questions are answered in the affirmative, the court will then consider whether the failure to give the instruction was clearly erroneous. *State v. Strong*, 317 Kan. 197, 201, 527 P.3d 548 (2023). To show clear error, Medina-Castro must firmly convince the court the jury would have entered a different verdict without the error. *Sinnard*, 318 Kan. at 291; *Turner*, 318 Kan. at 166-67.

While Medina-Castro maintains the evidence that he used and possessed methamphetamine is prior bad acts evidence under K.S.A. 2024 Supp. 60-455(a) used to prove his motive to murder M.T.—the State contends the evidence was inextricably

18

linked to the crime itself, meaning it was admitted independently of K.S.A. 60-455. Therefore, the State contends the lack of a limiting instruction is not an error. This court need not resolve this dispute but can just assume the evidence constituted prior bad acts evidence under K.S.A. 2024 Supp. 60-455(a) and thus the district court erred in omitting the limiting instruction. In making this assumption, the court then moves to the third step to determine whether the failure to give the limiting instruction constitutes clear error. *State v. Breeden*, 297 Kan. 567, 584, 304 P.3d 660 (2013).

Just as before, this court will only find clear error when it is firmly convinced the jury would have reached a different verdict if the limiting instruction had been given. *Breeden*, 297 Kan. at 584. Medina-Castro's contention that the jury was more likely to convict him of murder because he was a methamphetamine user is unpersuasive. First, Medina-Castro provides no evidence that the use of methamphetamine is linked to the propensity to murder or that the State made such a connection from which the jury would ignore all other jury instructions and make such a leap. Second, there was overwhelming evidence Medina-Castro shot M.T. and that M.T. died from those shots—including that Medina-Castro admitted that he fired multiple shots in self-defense. Medina-Castro cites no testimony or argument that arguably confused the jury about the purpose of the prior bad acts evidence or from which a jury could infer his prior drug use made him more likely to commit the murder. Given the evidence, there is nothing that creates any concern—much less firmly convinces this court—that had the jury received the prior bad acts limiting jury instruction it would have affected the outcome. The failure to give the limiting instruction was not clearly erroneous.

IV. MEDINA-CASTRO HAS NOT ESTABLISHED PROSECUTORIAL ERROR

Medina-Castro argues the prosecutor committed two errors during voir dire that undermined the presumption of innocence. The United States Constitution guarantees defendants the right to a fair trial, which includes a trial free from prejudicial

prosecutorial error. See *State v. Sherman*, 305 Kan. 88, Syl. ¶¶ 1, 5, 378 P.3d 1060 (2016). This court applies "a two-step analysis to evaluate claims of reversible prosecutorial error," identifying any error and then determining whether that error impermissibly prejudiced the defendant. 305 Kan. 88, Syl. ¶ 6.

First, in assessing whether a prosecutorial error occurred, this court must determine whether the prosecutor's statements fell "outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." *Sherman*, 305 Kan. 88, Syl. ¶ 7. Second, if the prosecutor's statements were in error, this court must "determine whether the error prejudiced the defendant's due process rights to a fair trial." 305 Kan. 88, Syl. ¶ 7; *State v. Brown*, 316 Kan. 154, Syl. ¶ 2, 513 P.3d 1207 (2022). This court reviews any error using the traditional constitutional harmlessness standard where the error is harmless if the State proves there is no reasonable possibility that the error contributed to the verdict. *Sherman*, 305 Kan. 88, Syl. ¶ 8 (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 [1967]).

Although Medina-Castro admits he did not contemporaneously object to the prosecutor's allegedly erroneous statements, such objection is not required to preserve claims of prosecutorial error during voir dire for appellate review. *State v. Boothby*, 310 Kan. 619, 628, 448 P.3d 416 (2019). Among other things, prosecutorial error occurs when a prosecutor misstates the law. *State v. Willis*, 319 Kan. 663, 670-71, 557 P.3d 424 (2024).

Medina-Castro contends the prosecutor committed reversible error by twice undermining the presumption of innocence in the emphasized portions of the following excerpt from voir dire:

"[A]s the Court has already said, and you'll be told again, obviously in America everyone is innocent *until* proven guilty beyond a reasonable doubt. That's the standard of proof. So, as Mr. Medina-Castro sits here today in front of you, everyone agrees that right now he's presumed innocent; correct. Anyone not feel that way?

"Does anyone feel that if he's sitting here in the courtroom this morning, man, he must have done something wrong and therefore he's probably guilty? Does anyone feel that way? No? All right.

"So, everyone is comfortable then holding me to my burden of proving this case beyond a reasonable doubt?

"*Assuming that the State can do that for you, again the jury instruction is going to say that you are to find him guilty of the charge that the State has proved beyond a reasonable doubt.* Anyone have a problem doing that? No response." (Emphases added.)

First, Medina-Castro argues the prosecutor should have said "everyone is innocent *unless* proven guilty" instead of the phrase "everyone is innocent *until* proven guilty." (Emphasis added.) Arguably, the prosecutor's wording was more presumptive of guilt than the alternative. In support of his contention, Medina-Castro cites *State v. Smith*, where the Kansas Supreme Court considered whether the "until" language in a jury instruction constituted clear error. 299 Kan. 962, 978-79, 327 P.3d 441 (2014). The *Smith* court acknowledged the use of "unless" in the jury instruction would have been better but concluded that use of the word "until" did not create clear error. Here, the prosecutor's voir dire statement correctly recited the law and thus did not constitute a misstatement of the law. See K.S.A. 21-5108(b) ("A defendant is presumed to be innocent until proven guilty."). Furthermore, this court must consider the context in which prosecutorial statements are made, and not consider them in isolation, to determine whether they are outside the wide latitude permitted. *State v. Ross*, 310 Kan. 216, Syl. ¶ 1, 445 P.3d 726 (2019); *Sherman*, 305 Kan. 88, Syl. ¶ 7. The context of the objected-to statement instructed the jury that Medina-Castro was presumed innocent and that the State had the burden to prove his guilt beyond a reasonable doubt: "as Mr. Medina-Castro sits here today in front of you, everyone agrees that right now he's presumed innocent; correct.

21

Anyone not feel that way? . . . So, everyone is comfortable then holding me to my burden of proving this case beyond a reasonable doubt?"

Medina-Castro also challenges the prosecutor's insinuation that if the State proved its case beyond a reasonable doubt, the jury would be required to convict Medina-Castro. While a jury has the power to nullify—or disregard—the law, it does not have the right to do so. *State v. Patterson*, 311 Kan. 59, 68, 455 P.3d 792 (2020) (quoting *Boothby*, 310 Kan. at 630-31). In *Patterson*, the defendant argued the court committed clear error in instructing the jury it had a duty to follow the law, meaning it should find the defendant guilty if the State proved its case. The Kansas Supreme Court found no clear error. 311 Kan. at 69. Likewise, this court finds no error in this accurate recitation of the law.

Having found no prosecutorial error in either statement, the court need not consider any potential prejudice. However, in an effort for completeness, even if this court assumes the prosecutor's statements constituted error, the State has demonstrated Medina-Castro suffered no prejudice. Prosecutorial error is harmless if the State demonstrates "'there is no reasonable possibility that the error contributed to the verdict.'" *Sherman*, 305 Kan. at 109 (quoting *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 [2012]). Analyzing prosecutorial error for prejudice is a fact-specific inquiry. 305 Kan. 88, Syl. ¶ 10.

Both alleged errors occurred during voir dire—at the beginning of the case, long before deliberation, which reduced any potential prejudicial impact. See *State v. J.L.J.*, 318 Kan. 720, 728, 547 P.3d 501 (2024) (indicating statements made in voir dire would have less impact on the jury as compared to statements made during closing argument). Additionally, the jury received accurate jury instructions regarding the burden of proof, which provided in relevant part, "The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty." It also

provided that: "If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty." These instructions were identical to the Pattern Instructions regarding the presumption of innocence and the State's burden. PIK Crim. 4th 51.010; see also *State v. Hillard*, 313 Kan. 830, 847-48, 491 P.3d 1223 (2021) (finding no error when prosecutor's statements merely reframed the jury instructions).

There is no reasonable possibility the prosecutor's statements contributed to the verdict, making any potential error harmless.

## V. MEDINA-CASTRO HAS NOT ESTABLISHED CUMULATIVE ERROR

Finally, Medina-Castro claims that cumulative error deprived him of a fair trial. Cumulative trial errors, when considered together, may impact a defendant's ability to receive a fair trial. Nevertheless, cumulative error cannot occur when the defendant fails to establish any error. See *State v. Reynolds*, 319 Kan. 1, Syl. ¶ 5, 552 P.3d 1 (2024) ("Unpreserved instructional issues that are not clearly erroneous may not be aggregated in a cumulative error analysis under K.S.A. 22-3414[3].").

## CONCLUSION

Medina-Castro appeals his conviction for intentional second-degree murder claiming that multiple errors either individually or cumulatively deprived him of a fair trial. Medina-Castro's claims include five unpreserved jury instruction errors, which he has failed to show constitute reversible error that affected the jury's verdict. Additionally, Medina-Castro failed to show prosecutorial error. Finally, there can be no cumulative error when there are no errors to cumulate. Accordingly, Medina-Castro's conviction is affirmed.

Affirmed.